[No. B209293. Second Dist., Div. Six. June 3, 2009.]

GAIL WILSON, Plaintiff and Appellant, v.
SAN LUIS OBISPO COUNTY DEMOCRATIC CENTRAL COMMITTEE
et al., Defendants and Respondents.

490

COUNSEL

Andre, Morris & Buttery and Dennis D. Law for Plaintiff and Appellant.

Saro G. Rizzo and Stewart D. Jenkins for Defendants and Respondents.

Olson, Hagel & Fishburn, Deborah B. Caplan, Lance H. Olson and Richard C. Miadich for California Democratic Party as Amicus Curiae on behalf of Defendants and Respondents.

## OPINION

YEGAN, Acting P. J.—Gail Wilson appeals from the judgment denying her petition for writs of mandate and prohibition. Wilson was removed from membership in the San Luis Obispo County Democratic Central Committee (Committee). She sought, inter alia, to compel the Committee and Stewart Jenkins (respondents) to reinstate her membership. Jenkins was a member of and recording secretary of the Committee. Appellant contends that (1) Committee bylaws authorizing her removal are invalid because they conflict with the Elections Code and are unconstitutionally vague; (2) her removal violated her First Amendment rights to free speech and political association; (3) her removal violated her constitutional right to procedural due process and her common law right to fair procedure; and (4) Committee bylaws unlawfully expanded the membership to include persons who are not statutorily authorized to become members. We affirm.

### Background

In March 2006 appellant filed nomination papers as an incumbent candidate for the office of Committee member. On June 6, 2006, appellant "was

appointed in lieu of election to the office of committee member . . . for a term expiring June 30, 2008." (Capitalization omitted.) Appellant's name was not printed on the Democratic Party's ballot because the number of candidates nominated for election to the Committee did not exceed the number of openings on the Committee. (Elec. Code, § 7228.)[1]

Appellant frequently complained that the Committee was unlawfully constituted to the extent it included persons who were not statutorily authorized to become members. (See §§ 7200, 7206–7207, 7211.) The Committee bylaws expanded the statutorily authorized membership to include the following: (1) "The Chair(s) of the Assembly District Committee(s) which include any portion of San Luis Obispo County, and the Regional Director(s) of the State Party whose region(s) includes any portion of San Luis Obispo County"; (2) "Members of the State Democratic Central Committee resident in this county"; and (3) "Presidents (or designee thereof) of volunteer Democratic clubs in this county which are chartered by this Committee."

Shortly before the November 2006 general election, appellant filed a complaint with the San Luis Obispo County District Attorney's Office. The nature of this complaint is disputed. Appellant claimed that the complaint concerned Jenkins's alleged violation of section 20201, which makes it unlawful to solicit funds for the use of a political party without that party's written consent. Jenkins claimed that appellant had accused the Committee of violating the Elections Code. The trial court's written ruling states that appellant had "apparently made a complaint to the District Attorney's office regarding misconduct by the Central Committee and Jenkins."

As a result of appellant's complaint, the economic crime unit of the district attorney's office contacted Debra Broner, the Committee chairperson. She "was advised that the District Attorney's Office was investigating a complaint that the [Committee] included unlawful members and chartering of Democratic organizations." Broner alleged that, "for at least two days, on or about Wednesday and Thursday right before the General Election," she "was compelled" to "gather and present documents that had previously been circulated with all of the committee [members], including [appellant]." The documents supported the legality of the Committee membership.

According to Broner, appellant's complaint impeded the Committee's campaign during the general election: "The interference [appellant's] timing caused with the conduct of the election campaign by the [Committee] was severe. The impact was not limited to this county. I was constrained to contact the Party's Regional Director, and the State Chairman's office. There

---

[1] All statutory references are to the Elections Code.

was great concern that an unfounded investigation, triggered so close to the General Election clearly would interfere with the conduct of the campaign in our county, and close statewide campaigns. . . . The District Attorney's Office found no basis for taking action, but the delay impeded the [Committee's] campaign."

Broner declared that, after the district attorney's investigation, Committee "members recognized how gravely the unfounded complaint had undermined the substantial work of the committee. Members expressed an understanding that these kinds of unfounded complaints from a committee member would continue to under-mine [sic] the work of the committee through the critical 2008 Presidential campaign." Accordingly, 22 members signed a motion to remove appellant from office for failing "to contribute to the substantial work of the Committee."

The motion was authorized by the Committee's bylaws. Section 1 of article V of the bylaws provides: "Members are expected to be regular in attendance at meetings and regular contributors to the substantial work of the Committee." Section 2 of article V provides: "Members who are severely deficient in this requirement may be removed according to Article VI and Article IX." Article IX requires that a removal motion must first be presented at a regular meeting of the Committee. "At the next regular meeting . . . , the . . . member shall be given an opportunity to answer the charges and confront the persons making the charges." A two-thirds vote of the Committee is necessary to remove a member.

The motion to remove appellant was formally made at a meeting of the Committee on January 10, 2007, and a copy of the motion was given to her at that time. The motion was debated at the next regularly scheduled meeting on February 13, 2007. Committee members spoke in favor of and against the motion. Appellant spoke in her own defense.

Cheryl Conway, one of the members who spoke in favor of the motion, stated as follows: "[Appellant] poisons the well with each new member of the committee by telling them at the beginning of their association with us that they are illegal and unethical. In the last seven or eight months, the messages have escalated in frequency and fervor. Each seemingly containing the implicit threat the member's participation will subject them to jail time and financial fines. This is not supporting the substantial work of the committee. In fact, it's undermining it at every turn. I have personally witnessed [appellant] telling out of the area dignitaries that the committee is unethical and illegal because we, by virtue of our bylaws and statewide bylaws, have allowed our membership legally to be more expansive and inclusive of our communities. [Appellant] is poisoning the well of our ability to bring in

well-known statewide candidates to assist in fund raising because of her increasingly threatening messages to them. She has even sent an e-mail message to Jack O'Connell's office . . . that his representative, Mike Hyle, is illegally a member of our . . . county committee. She has recently begun to make clear that her threats are personally directed to one of our members, sending out e-mails about irrelevant issues and spewing vindictive remarks. . . . For many years, members have been trying to work with [appellant] and provide her with the information that it would take to convince her that [her] interpretation is wrong and that the continually escalating behaviors are not conducive to a strong committee, enabling us to turn [San Luis Obispo County] blue. In fact, she has recently reported us, to the [San Luis Obispo] County District Attorney's office right before the election cycle, and the state and national parties. She has told our former chair that she will never give up this quest, no matter what."

At the end of the debate, a vote was taken. Twenty-two members voted in favor of the motion, 10 members voted against it, and one member abstained. The chairperson "declared the motion to remove [appellant] from Membership on the Committee had passed."

Appellant filed a petition for a writ of mandate to compel respondents to reinstate her as a member of the Committee and "to remove as Committee Members . . . all persons not duly elected under the *California Elections Code* or serving as ex officio members pursuant to [sections] 7206 and 7211." Appellant also sought a writ of prohibition precluding respondents from removing her from office, "once she has been reinstated, for any reason other tha[n] those enumerated in [the Elections Code]" and "to preclude Respondents from selecting new members except pursuant to [the Elections Code]." The trial court denied the petition in a nine-page ruling.

*Mootness*

■ Because appellant's term of office expired on June 30, 2008, we cannot reinstate her to the office of Committee member. Therefore, the portion of this appeal relating to her removal from office is moot. "An appeal becomes moot when, through no fault of the respondent, the occurrence of an event renders it impossible for the appellate court to grant the appellant effective relief. [Citation.]" (*In re Yvonne W.* (2008) 165 Cal.App.4th 1394, 1404 [81 Cal.Rptr.3d 747].)

■ We exercise our discretion to consider the removal issues pursuant to the principle that, "if an appeal is technically moot, but 'there may be a recurrence of the same controversy between the parties and the parties have fully litigated the issues,' a reviewing court may in its discretion reach the

merits of the appeal. [Citation.]" (*City of Hollister v. Monterey Ins. Co.* (2008) 165 Cal.App.4th 455, 480 [81 Cal.Rptr.3d 72].) The controversy between the parties has already recurred. Pursuant to rule 8.252(c) of the California Rules of Court, we granted appellant's motion to take additional documentary evidence on appeal consisting of (1) a certificate of election showing that, on June 3, 2008, appellant was elected to the office of Committee member for a term expiring on June 30, 2010; and (2) appellant's petition for writ of mandate, filed on December 18, 2008, seeking reinstatement of her membership after the Committee had allegedly informed her that "she had forfeited her Office as Committee member and . . . would be prohibited from participating in Committee meetings." Many of the issues raised in appellant's petition are similar to those raised in this appeal.

We also exercise our discretion to consider the removal issues pursuant to the following principle: " ' "[I]f a pending case poses an issue of broad public interest that is likely to recur, the court may exercise an inherent discretion to resolve that issue even though an event occurring during its pendency would normally render the matter moot." [Citation.]' " (*Edelstein v. City and County of San Francisco* (2002) 29 Cal.4th 164, 172 [126 Cal.Rptr.2d 727, 56 P.3d 1029].) The removal issues presented by this case are of broad public interest and have already recurred.

*Discussion*

I

*Standard of Review*

"When reviewing a trial court's ruling on a petition for traditional writ of mandate, we review any findings under the substantial evidence standard." (*Kurz v. Federation of Pétanque U.S.A.* (2006) 146 Cal.App.4th 136, 144 [52 Cal.Rptr.3d 776].) "Where, as here, a 'purely legal question' is at issue, courts 'exercise independent judgment . . . .' [Citation.]" (*County of San Diego v. State of California* (1997) 15 Cal.4th 68, 109 [61 Cal.Rptr.2d 134, 931 P.2d 312].)

II

*Removal Clause: Invalidity Based on Conflict with Elections Code*

Appellant contends that the removal clause of the bylaws is invalid because the Elections Code does not authorize the Committee to adopt rules

regulating the removal of its members. Appellant notes that section 7241, subdivision (a), provides that a Democratic Party county central committee "may make rules and regulations providing: [¶] . . . [¶] . . . [h]ow officers of the committee may be removed," not how members may be removed.

Appellant further contends that the removal clause is invalid because it establishes grounds for removal not mentioned in sections 7213 and 7215, the only sections of the Elections Code providing for the removal of members of a Democratic Party county central committee. Section 7213 provides: "Any member of a committee, other than an ex officio member, who misses more than three consecutive regularly called meetings may be removed by a vote of the committee concerned, unless his or her absence is caused by illness or temporary absence from the county on the date of the meeting." Section 7215 provides: "A committee may remove any member, other than an ex officio member, who during his or her term of membership affiliates with, or registers as a member of another party, who publicly advocates that the voters should not vote for the nominee of this party for any office, or who gives support or avows a preference for a candidate of another party or candidate who is opposed to a candidate nominated by this party."

The controlling authority is *Eu v. San Francisco Democratic Comm.* (1989) 489 U.S. 214 [103 L.Ed.2d 271, 109 S.Ct. 1013] (*Eu*). In *Eu* the Supreme Court concluded that certain provisions of the Elections Code are unconstitutional because they "burden the First Amendment rights of political parties and their members without serving a compelling state interest." (489 U.S. at p. 233.) The unconstitutional provisions "prescribe[] the composition of state central committees, limit[] the committee chairs' term[] of office, and designat[e] that the chair rotate between residents of northern and southern California . . . ." (*Id.*, at p. 220.) The court reasoned that these provisions "directly implicate the [First Amendment] associational rights of political parties and their members" because they limit "a political party's discretion in how to organize itself, conduct its affairs, and select its leaders." (*Id.*, at pp. 229–230.) Although the provisions in question concerned the state central committee, the *Eu* court made clear that its reasoning also applied to county central committees: "By requiring parties to establish official governing bodies at the county level, California prevents the political parties from governing themselves with the structure they think best." (*Id.*, at p. 230, fn. omitted.)

The *Eu* court observed, "A State indisputably has a compelling interest in preserving the integrity of its election process. [Citation.] Toward that end, a state may enact laws that interfere with a party's internal affairs when necessary to ensure that elections are fair and honest." (*Eu, supra*, 489 U.S. at p. 231.) The court determined that the state had failed to

establish the requisite compelling state interest because it had "not shown that its regulation of internal party governance is necessary to the integrity of the electoral process." (*Id.*, 489 U.S. at p. 232.) In sum, the court declared, "a State cannot justify regulating a party's internal affairs without showing that such regulation is necessary to ensure an election that is orderly and fair. Because California has made no such showing here, the challenged laws cannot be upheld." (*Id.*, at p. 233, fn. omitted.)

 ■   Assuming for purposes of discussion that the Elections Code does not authorize a county central committee to remove a member on grounds other than those specified in the code, appellant has failed to show that this restriction "is necessary to ensure an election that is orderly and fair."[2] (*Eu, supra,* 489 U.S. at p. 233.) Appellant argues that "[t]he Elections Code necessarily limits the power to remove persons who are publicly elected [to county central committees] in order to preserve the democratic process . . . ." Appellant was not "publicly elected," since her name did not appear on the democratic ballot. She "was appointed in lieu of election to the office of committee member." (Capitalization omitted.) In any event, preserving "the democratic process" in internal party affairs is not a compelling state interest. The *Eu* court rejected a similar argument "that the challenged laws serve a compelling 'interest in the "democratic management of the political party's internal affairs." ' " (*Eu, supra,* 489 U.S. at p. 232.) The court explained that "the State has no interest in 'protect[ing] the integrity of the Party against the Party itself.' [Citation.]" (*Ibid.*)

Appellant further argues: "The state has a significant interest in having a uniform set of removal standards applicable to all county committees." But appellant does not show that such uniformity is necessary to the integrity of the electoral process. If it were necessary, the Legislature would have imposed uniform removal standards on all political parties. But no such uniformity exists. For example, section 7855, which applies to Peace and Freedom Party county central committees, authorizes the removal of a committee member for a violation of "the bylaws or constitution of the committee."[3] If section 7855 had applied to the Democratic Party, it would

---

[2] In 1994, five years after the *Eu* decision, the entire Elections Code was repealed and reenacted with new numbering. (Stats. 1994, ch. 920, §§ 1 & 2, p. 4690.) We do not consider the impact, if any, of this repeal and reenactment on statutory construction.

[3] Section 7855 provides: "A committee may remove any elected or appointed member, who during the term of membership, affiliates with or registers as a member of another political party, publicly advocates that the voters should not vote for the nominee of the party for any office, publicly gives support to or avows a preference for a candidate of another party or candidate who is opposed to a candidate nominated by this party, *or has violated the bylaws or constitution of the committee.*" (Italics added.)

have authorized the removal of appellant for violating the bylaw requiring members to be "regular contributors to the substantial work of the Committee."

■   Appellant contends that, irrespective of *Eu*, the Elections Code prevails over the bylaws because of the following statement in the bylaws' preamble: "The provisions of the Elections Code shall control in . . . case of any conflict between that Code and these bylaws." But the Committee members who adopted the bylaws could not have intended that a valid bylaw would be superseded by Elections Code provisions that unconstitutionally burdened their First Amendment rights. The only reasonable interpretation of the preamble is that conflicting provisions of the Elections Code shall control to the extent they are constitutional. "Bylaws must ' "be given a reasonable construction and, when reasonably susceptible thereof, they should be given a construction which will sustain their validity . . . ." ' [Citation.]" (*Sanchez v. Grain Growers Assn.* (1981) 126 Cal.App.3d 665, 672 [179 Cal.Rptr. 459].)

*Green Party of California v. Jones* (1995) 31 Cal.App.4th 747 [37 Cal.Rptr.2d 406], is distinguishable. In that case the court concluded that the Elections Code prevailed over two conflicting rules of the Green Party (the primary closure and affirmative vote rules) regulating primary elections for partisan offices.[4] Unlike the situation here, the conflicting rules did not pertain solely to a political party's internal affairs, i.e., the membership of a local governing body. Accordingly, the removal clause of the bylaws is not invalid even if it conflicts with the Elections Code.

### III

*Removal Clause: Invalidity Based on Vagueness*

■   Appellant contends that the removal clause is unconstitutionally vague. "Vagueness doctrine is an outgrowth not of the First Amendment, but of the Due Process Clause of the Fifth Amendment." (*United States v. Williams* (2008) 553 U.S. 285 [170 L.Ed.2d 650, 128 S.Ct. 1830, 1845].) "[T]he underlying concern is the core due process requirement of adequate *notice*." (*People ex rel. Gallo v. Acuna* (1997) 14 Cal.4th 1090, 1115 [60 Cal.Rptr.2d

---

[4] "The primary closure rule provides . . . that the party convention will decide which, if any, statewide partisan offices the party will contest and the county councils will decide which local partisan offices to contest. Lacking approval, no candidates may submit Green Party nomination papers for the office." (*Green Party of California v. Jones, supra*, 31 Cal.App.4th at p. 750.) "The affirmative vote rule, as modified by the trial court, requires the Secretary of State to include on the Green Party primary election ballot the category none-of-the-above and to deny certification as nominee to any person who fails to receive more votes than cast for that category." (*Id.*, at p. 752.)

277, 929 P.2d 596].) "Only those actions that may fairly be attributed to the state . . . are subject to due process protections. [Citations.]" (*Coleman v. Department of Personnel Administration* (1991) 52 Cal.3d 1102, 1112 [278 Cal.Rptr. 346, 805 P.2d 300].) The state action requirement applies to due process protections under both the federal and state Constitutions. (*Kruger v. Wells Fargo Bank* (1974) 11 Cal.3d 352, 366–367 [113 Cal.Rptr. 449, 521 P.2d 441].)

█ We reject appellant's vagueness claim because she has failed to show that the state action requirement was satisfied. Appellant acknowledges that "a political party is a private organization." A political party's county central committee does not perform any governmental functions, and membership in the committee is not a public office. (*Moore v. Panish* (1982) 32 Cal.3d 535, 544–546 [186 Cal.Rptr. 475, 652 P.2d 32].) "A public office requires . . . the delegation to the office of some portion of the sovereign functions of government, either legislative, executive or judicial. [Citations.] Party county central committee members do not exercise any sovereign powers of government. [Citations.] The county committee is charged with conducting the party's political campaigns under the direction of the state party organization. [Citation.] Though such functions may be considered beneficial to the public insofar as they promote the party system adopted by the state, it is the interplay of the parties within an established framework rather than the specific campaign activities of the individual parties which benefits the public. The functions of party committee members remain those of their particular political party and do not involve the exercise of the sovereign power of the public. [Citation.] Thus, the courts have recognized that party county central committee membership is in reality an office of a political party. [Citation.]" (*Id.*, at p. 545, fn. omitted.)

*Smith v. Allwright* (1944) 321 U.S. 649 [88 L.Ed. 987, 64 S.Ct. 757], and *Terry v. Adams* (1953) 345 U.S. 461 [97 L.Ed. 1152, 73 S.Ct. 809], are distinguishable. Both cases involved political party rules excluding African-Americans from voting in primary elections to select nominees for a general election. In *California Democratic Party v. Jones* (2000) 530 U.S. 567, 573 [147 L.Ed.2d 502, 120 S.Ct. 2402], the Supreme Court observed: "In *Allwright*, we invalidated the Texas Democratic Party's rule limiting participation in its primary to whites; in *Terry*, we invalidated the same rule promulgated by the Jaybird Democratic Association, a 'self-governing voluntary club,' [citation]. These cases held only that, when a State prescribes an election process that gives a special role to political parties, it 'endorses, adopts and enforces the discrimination against Negroes' that the parties (or, in the case of the Jaybird Democratic Association, organizations that are 'part and parcel' of the parties, [citation]) bring into the process—so that the parties' discriminatory action becomes state action under the Fifteenth Amendment. [Citations.]" No such racial discrimination occurred here.

IV

*Right to Free Speech and Political Association*

Appellant contends that her removal from the Committee violated her First Amendment right to free speech because her "vigorous advocacy was the primary basis of her removal." "By retaliating for speech it disagreed with, the [Committee] effectively censored [appellant] for speaking her mind." Appellant further contends that her removal violated her First Amendment right to political association.

█ The rights to free speech and political association are "protected against federal encroachment by the First Amendment [and] are entitled under the Fourteenth Amendment to the same protection from infringement by the States. [Citation.]" (*Mine Workers v. Illinois Bar Assn.* (1967) 389 U.S. 217, 222, fn. 4 [19 L.Ed.2d 426, 88 S.Ct. 353]; see also *Hudgens v. NLRB* (1976) 424 U.S. 507, 513 [47 L.Ed.2d 196, 96 S.Ct. 1029] ["It is, of course, a commonplace that the constitutional guarantee of free speech is a guarantee only against abridgment by government, federal or state."].) We reject appellant's First Amendment claim because she has failed to show that the state action requirement was satisfied. (See the discussion in pt. III above.)

V

*Constitutional Right to Procedural Due Process and*
*Common Law Right to Fair Procedure*

Appellant contends that her removal from the Committee violated her right to procedural due process under the federal and state Constitutions. Once again, we reject her claim for failure to show that the state action requirement was satisfied. (See *Shoemaker v. County of Los Angeles* (1995) 37 Cal.App.4th 618, 631–632 [43 Cal.Rptr.2d 774].)

█ Appellant also contends that she was denied her common law right to fair procedure. " 'California courts have long recognized a common law right to fair procedure protecting individuals from arbitrary exclusion or expulsion from private organizations which control important economic interests.' [Citation.] Such a private organization's actions must be both substantively rational and procedurally fair. [Citation.] What constitutes a fair procedure is not fixed or judicially prescribed. '[T]he associations themselves should retain the initial and primary responsibility for devising a method which provides an applicant adequate notice of the "charges" against him and a reasonable opportunity to respond.' " (*Rosenblit v. Superior Court* (1991) 231 Cal.App.3d 1434, 1445 [282 Cal.Rptr. 819].) "To be informed of the charges,

the proposed disciplinary action, and an opportunity in some manner to present countervailing evidence may satisfy the twin due process requirements of being substantively rational and procedurally fair, as opposed to a full-blown adversarial process with the right to counsel and cross-examination. Under some circumstances, for example, a mere written response may be deemed fair, as opposed to a formal hearing. [Citation.]" (*Kurz v. Federation of Pétanque U.S.A., supra*, 146 Cal.App.4th at p. 150, fn. omitted.)

■ The common law right to fair procedure arguably does not apply here because appellant's removal from the Committee had no impact on her economic interests. "The common law right to fair procedure protects an individual from arbitrary exclusion or expulsion . . . where the exclusion or expulsion has substantial adverse economic ramifications. [Citation.]" (*Kim v. Southern Sierra Council Boy Scouts of America* (2004) 117 Cal.App.4th 743, 746 [11 Cal.Rptr.3d 911]; see also *Potvin v. Metropolitan Life Ins. Co.* (2000) 22 Cal.4th 1060, 1071 [95 Cal.Rptr.2d 496, 997 P.2d 1153] [an "insurer wishing to remove a doctor from one of its preferred provider lists must comply with the common law right to fair procedure" only when the removal will affect "an important, substantial economic interest"].)

On the other hand, an argument may be made that the common law right to fair procedure applies where, as here, a private organization removes a member even though the removal has no economic impact. The rationale for this argument "is that membership in an association, with its associated privileges, once attained, is a valuable interest which cannot be arbitrarily withdrawn." (*Ezekial v. Winkley* (1977) 20 Cal.3d 267, 273 [142 Cal.Rptr. 418, 572 P.2d 32]; see also *Kurz v. Federation of Pétanque U.S.A., supra*, 146 Cal.App.4th at pp. 147–148.)

We need not determine whether the common law right to fair procedure applies to appellant's removal from the Committee. Assuming that it does, the Committee complied with fair procedure requirements. At a meeting of the Committee on January 10, 2007, a motion was made to remove appellant on the ground that she had "failed to contribute to the substantial work of the Committee." The motion was in writing and was signed by 22 members of the Committee. A copy of the motion was personally given to appellant, who was present at the meeting.

On February 9, 2007, appellant sent a detailed e-mail to Committee members defending herself against the removal motion. On February 11, 2007, Jenkins sent an e-mail to Committee members setting forth reasons why appellant should be removed from office. The e-mail put appellant on notice as to the grounds for the charge that she had "failed to contribute to

the substantial work of the Committee." Jenkins declared that appellant's "baseless accusations that the Committee Membership is violating the Election[s] Code sabotages the substantial work of the Committee." "A member who, just before the 2006 General Election, writes the [San Luis Obispo] County District Attorney to accuse the Chairwoman and the Committee, of misdemeanor violations of the Election[s] Code in how it defines its membership, is not exercising free speech. The timing of this baseless charge had to be understood by that member as an attack on the Committee's work. That the Committee Chairwoman would have to, as she did, suspend the campaign work for two days right before the General Election to provide the D.A. with all the paperwork previously reviewed by the Committee was completely foreseeable." "Active Sabotage of the conduct of the Democratic Party Campaign is the opposite of contributing to the substantial work of the Committee. The timing of this baseless and fruitless attack was clearly active sabotage." Appellant acknowledges that she received Jenkins's e-mail before the February 13, 2007, meeting regarding her removal.

At the meeting on February 13, 2007, Committee members spoke in favor of and against the motion. Appellant spoke in her own defense. The motion was passed by a two-thirds vote of the Committee. Appellant protested, "alleging that the membership of the Committee is illegal, that bylaws don't allow removal, and the election code doesn't allow removal."

Thus, appellant was afforded the basic requirements of common law fair procedure: " 'adequate notice of the "charges" against [her] and a reasonable opportunity to respond.' " (*Rosenblit v. Superior Court, supra,* 231 Cal.App.3d at p. 1445.) Furthermore, the Committee's actions were "substantively rational," not arbitrary. (*Ibid.*) Nevertheless, appellant contends that she was denied a fair procedure because she "was denied the right to a hearing conducted by impartial decision makers." (Boldface & capitalization omitted.) Appellant alleges that "a large percentage of the Committee Members present and eligible to vote were her adversaries." These alleged adversaries included 13 members who had signed the motion to remove her and 14 members "whose membership eligibility [appellant] was challenging." But the disqualification of these members would have "stacked the deck" in appellant's favor, shielding her from removal. It also would have nullified the removal clause of the bylaws. The two-thirds vote required for a member's removal cannot be attained if the member's opponents are disqualified from voting. Accordingly, the participation of appellant's alleged adversaries in the voting did not deprive her of common law fair procedure.

## VI

### *Expansion of Committee Membership*

Appellant contends that the bylaws' "expansion of Committee membership to include three classifications not specified in the Elections Code is unlawful." We disagree.

In *Eu* the Supreme Court struck down Elections Code provisions prescribing the composition of state central committees. The court observed that, "by specifying who shall be the members of the parties' official governing bodies, California interferes with the parties' choice of leaders." (*Eu, supra*, 489 U.S. at p. 230.) The Supreme Court concluded that this interference did not serve a compelling state interest because the state had failed to show that it was "necessary to ensure an election that is orderly and fair." (*Id.*, at p. 233.)

▮ To the extent that Elections Code provisions prescribe the composition of Democratic Party county central committees, they also interfere with the parties' choice of leaders. Like the state in *Eu*, appellant has failed to show that this restriction is "necessary to ensure an election that is orderly and fair." (*Eu, supra*, 489 U.S. at p. 233.) "[A] State cannot substitute its judgment for that of the party as to the desirability of a particular internal party structure, any more than it can tell a party that its proposed communication to party members is unwise. [Citation.]" (*Id.*, at p. 233.)

Appellant argues that "there is a compelling state interest in . . . uniformity between county committees." But she does not explain why such uniformity is necessary to the integrity of the electoral process. There is no such uniformity between political parties. Section 7850 provides that a Peace and Freedom Party county central committee, "in its sole discretion, may appoint any additional members to the county central committee as it may desire."

Appellant further argues: "The Elections Code restrictions on membership serve the purpose of imposing . . . democratic principals [*sic*] on the composition of county committee membership." "[T]he political organization and operations of the Democratic Party should at least strive to be in fact 'democratic'." As we noted in part II above, the *Eu* court rejected a similar argument "that the challenged laws serve a compelling 'interest in the "democratic management of the political party's internal affairs." ' " (*Eu, supra*, 489 U.S. at p. 232.)

▮ Thus, to the extent that Elections Code provisions prescribe the composition of Democratic Party county central committees, they cannot be

upheld because they "burden the First Amendment rights of political parties and their members without serving a compelling state interest." (*Eu, supra,* 489 U.S. at p. 233.)

*Disposition*

The judgment is affirmed. Respondents shall recover their costs on appeal.

Coffee, J., and Perren, J., concurred.

A petition for a rehearing was denied June 29, 2009, and the opinion was modified to read as printed above. Appellant's petition for review by the Supreme Court was denied October 14, 2009, S175348.