[No. B213759. Second Dist., Div. Seven. June 29, 2010.]

CHANG HO YOO et al., Petitioners and Respondents, v.
SANDRA SHEWRY, as Director, etc., Defendant and Appellant.

134

**COUNSEL**

Edmund G. Brown, Jr., Attorney General, Douglas M. Press, Assistant Attorney General, Jennifer M. Kim and Chara L. Crane, Deputy Attorneys General, for Defendant and Appellant.

Hooper, Lundy & Bookman and Patric Hooper for Petitioners and Respondents.

**OPINION**

**JACKSON, J.—**

## INTRODUCTION

Defendant Sandra Shewry, the former Director of the State Department of Health Care Services (the Department or DHCS), appeals from the order granting the petition for writ of mandate filed by petitioners Chang Ho Yoo (Yoo), a pharmacist doing business as PCH Medical Pharmacy (PCH) in Long Beach, California, and CNN PharmaCare, Inc. (CNN), of which Yoo is the majority owner. The question presented for resolution is as follows: When the Department suspects fraud and willful misrepresentation on the part of a Medi-Cal provider and withholds Medi-Cal payments from that provider pursuant to Welfare and Institutions Code[1] section 14107.11, is the Department required to pay interest on the amount of withheld payments that are later disbursed to the provider after the Department has finished its investigation, where the Department delays unreasonably in making the disbursement? In granting the petition, the court answered this question in the affirmative, concluding that the payment of interest was compelled by Civil Code section 3287.

On appeal, the Department contends that section 14107.11 does not require or permit the payment of interest on Medi-Cal payments that are temporarily withheld and Civil Code section 3287 is inapplicable in this case. We agree and reverse the order granting petitioner's writ of mandate.

## FACTUAL AND PROCEDURAL BACKGROUND

In a letter dated April 6, 2005, the Department advised Yoo that effective April 1, 2005, the Medi-Cal program was temporarily withholding 100 percent of PCH's Medi-Cal payments under provider No. PHA445270 pursuant to section 14107.11 and title 42 of the Code of Federal Regulations part 455.23 (2004), in that the Department suspected PCH of committing fraud or willful misrepresentation against the Medi-Cal program.

CNN owned and operated Roxbury Pharmacy (Roxbury) from October 2003 to May 2006. In a letter dated June 9, 2006, the Department advised

---

[1] All further statutory references are to the Welfare and Institutions Code unless otherwise noted.

Yoo that effective that date it was temporarily withholding 100 percent of Roxbury's Medi-Cal payments under provider No. PHA355460 because of suspected fraud and willful misrepresentation. The Department further advised Yoo that effective June 24, the Department was temporarily suspending and deactivating his Medi-Cal provider No. PHA355460 in accordance with section 14043.36, subdivision (a), in that he was "under investigation for fraud, abuse or willful misrepresentation."

In August 2007, the Office of the State Controller (State Controller), on behalf of the Department, completed its audit of PCH for the period May 1, 2003, through April 30, 2006. It determined that PCH could not substantiate $1,069,982 of its claims. On October 4, 2007, the State Controller sent Yoo's counsel a letter regarding PCH's final audit results. The State Controller advised counsel that there had been "an overpayment of $1,069,982" and that the State Controller would send a report to the Department, detailing its findings. The Department, in turn, would send a demand for repayment to Yoo. The State Controller further advised counsel of Yoo's right to request a hearing within 30 calendar days of receiving the audit or exam findings, if Yoo disputed any of the findings.

In a letter dated March 12, 2008, the Department advised Yoo's counsel that with regard to PCH, it was "bringing closure to the temporary withhold on your client's Medi-Cal practice. The State Controller's Office has not yet issued an audit demand, but has estimated that the demand will be approximately **$1,069,982.00**. Please be advised that this amount is tentative and subject to change; the demand when issued may be higher or lower. [¶] The funds held as a result of the withhold amount to approximately **$4,536,711.00**. DHCS will retain in the withhold account an amount equal to the tentative liability of **$1,069,982.00**. The remaining funds will be returned to your client at the pay to address on record with the Provider Enrollment Division. [¶] Please allow approximately ten to 15 working days for the processing and mailing of the funds. . . ."

In the meantime, on February 15, 2008, petitioners filed a petition for writ of mandate pursuant to Code of Civil Procedure section 1085.[2] Therein,

---

[2] Although the petition was filed as a class action, the class was not certified before the trial court granted the writ relief requested by petitioners.

On the day the petition was filed, the trial court designated the proceedings as complex pursuant to California Rules of Court, rule 3.400. The Department thereafter filed an objection to the complex designation. On May 6, 2008, Judge Victoria Chaney elected not to rule on the Department's objection. Instead, she reassigned the case to Judge David P. Yaffe for a ruling on the writ of mandate. If the case survived, Judge Yaffe was to return the case to Judge Chaney, who then would decide whether or not the case was complex. Upon a determination that the case was complex, Judge Chaney would assign the matter to Judge Peter Lichtman.

petitioners challenged the Department's practice "of refusing to pay interest on Medi-Cal payments withheld, in many cases for years, from providers of Medi-Cal services even though [it] knows or should know such payments are properly owing the providers." Petitioners asked the trial court to invalidate the challenged policy and practice and to order the Department "to comply with the applicable provisions of the law and to pay interest to providers on such improperly withheld funds." Petitioners explained that their lawsuit did not challenge the Department's "authority to withhold temporarily Medi-Cal payments from providers in the first place." Rather, it challenged only the Department's "unauthorized, arbitrary, but steadfast refusal to pay interest on providers' Medi-Cal payments once [the Department] knows (or should know) the payments are no longer the proper subject of a continuing withhold."

On March 14, 2008, the Department demurred to the petition for writ of mandate. It argued that petitioners failed to state a cause of action. Specifically, it argued that section 14107.11 does not require or authorize the Department to pay interest on withheld Medi-Cal payments, and section 14171.6 is inapplicable to withheld payments.

On June 10, 2008, the trial court issued a tentative decision and held a hearing on the petition for writ of mandate. Its minute order states: "The court does not agree with the position taken by either party. The petitioner's position, that an interest recovery provision contained in . . . section 14171[, subdivision] (g) is to be written into . . . section 14107.11, is without merit. The legislature did not intend to do so or it would have done so. The respondent's contention, that a statute that is silent as to the recovery of interest is to be read as if the statute prohibits the recovery of interest, is also without merit for the same reason.

"A more probable reading of the intention of the legislature and a fairer result in this case can be achieved by holding that California's general statute on the recovery of interest, [Civil Code section 3287, subdivision (a)], is applicable to the claim alleged in the petition. Whether that statute will allow any interest on petitioner's claim in this case, and if so, from what date, will depend upon facts that are not alleged or proved by either party. The court has no opinion as to the ultimate outcome of this case if [Civil Code section 3287, subdivision (a)] applies.

"The court cannot see any reason why the application of [Civil Code section 3287, subdivision (a)] will frustrate or defeat any federal policy or regulation,

---

After the trial court issued its order granting the peremptory writ of mandate, but before the Department filed its notice of appeal, Judge Lichtman, on January 12, 2009, overruled all of the Department's objections to the complex designation and ordered that the case remain in his courtroom for all purposes and set a further status conference.

or why it will be contrary to the intention of the legislature or a threat to any legitimate interest of the Department . . . ." The court invited the parties to file supplemental briefs addressing its tentative decision and continued the matter.

On August 4, 2008, after receipt of the parties' supplemental briefs, the court again held a hearing at which it observed: "I think whether or not the state held the money for an unreasonable time is a question of fact, and I think in order to make a finding of a date, I'm going to need evidence. I do not think that I can decide the case as a matter of law . . . ." The court asked petitioners to provide additional evidence by way of declarations establishing "an evidentiary basis to fix a time upon which interest should begin to run." In response to a query by counsel for the Department, the court held that petitioners are entitled to interest under Civil Code section 3287 "if they can prove the right to interest from a particular day."

The court's minute order of August 4, 2008, further reflects its determinations up to that point: "The court has considered the supplemental briefs submitted by the parties on the issue of whether petitioner may be awarded interest by this court under [Civil Code section 3287, subdivision (a)]. Once again the court does not agree with the position taken by either party. The State's contention that the 3.5 million dollars that it withheld from the provider and did not return until three years later did not cause the provider to incur 'damages' as that term is used in [Civil Code section 3287, subdivision (a)] is without merit. The loss of use of that sum for the three years that it was withheld constitutes such damages, and the voluntary return of the money without interest three years after it was taken does not absolve the State from liability for such damages. The State had a statutory right to withhold those funds TEMPORARILY. Temporary does not mean permanent and the right to temporarily hold the money does not mean that the State can hold it for as long as it pleases. The right to make a temporary withholding implies a duty to pay the money back and the fact that the duration of the temporary withholding is not fixed by statute or regulation means that the State can withhold it for only a reasonable period of time. When the State overpays a provider, it is entitled to recover interest on the overpayment under Civil Code section 3287. [Citation.] The withholding of payment from a provider for an unreasonable period of time entitles the provider to interest under the same statute, but only to the extent that the withholding was unreasonable.

"Although interest under [Civil Code section 3287, subdivision (a)] cannot be awarded administratively, it may be awarded by a court in a mandamus proceeding provided the court finds that the State wrongfully withheld the 3.5 million dollars from the provider. In order to recover such interest, however, the provider must show: '(1) An underlying monetary obligation, (2) damages which are certain or capable of being made certain by calculation, and (3) a right to recovery that vests on a particular day.' [Citation.] Petitioner's contention, that it is entitled to recover such interest as a matter of law, and without regard to the reasonableness of the period of withholding, is also without merit. The provider must show a right to recovery that vests on a particular day. The date upon which the funds were withheld does not establish the date upon which they are to be returned because the statutory scheme is obviously intended to provide the State with, 'a reasonable time to process each legitimate claim.' [Citation.]"

The court again continued the hearing on the merits of the petition "to permit petitioner to submit evidence by declarations under penalty of perjury to show that its right to recover the 3.5 million dollars vested on a particular day, if petitioner is able to do so." The court further stated that petitioner "is also entitled to pursue discovery to obtain such evidence and to compel such discovery by appropriate motions if it is necessary to do so."

On September 9, 2008, Yoo submitted a declaration. With regard to PCH, Yoo recounted that the Department, through the State Controller, audited PCH's Medi-Cal activities for the period of May 1, 2003, through May [*sic*; April] 30, 2006. The audit commenced in August 2006.

At an exit conference held on August 23, 2007, the auditors advised Yoo that they believed approximately $1 million of the more than $5 million of claims audited were not supported by adequate documentation. In a letter dated October 4, 2007, and addressed to Yoo's attorney, the State Controller confirmed this finding and the alleged "overpayment" liability of $1,069,982.[3]

---

[3] In its letter, the State Controller further advised counsel that it would send a report detailing its findings to the Department, which in turn would send a demand for repayment to the owner in the amount of $1,069,982. The letter also informed counsel that if Yoo disputed any of the findings made, "he may (as outlined under California Code of Regulations, Title 22, Section 51017 and 51022) file a written request with the Department for a hearing within 30 calendar days of the receipt of the audit or exam findings."

Yoo subsequently did dispute the Department's audit demand of $1,069,982. On August 17, 2009, the Department's office of administrative hearings and appeals denied Yoo's appeal and upheld the State Controller's audit findings. On October 8, 2009, Yoo filed a petition for writ of mandate pursuant to Code of Civil Procedure section 1094.5 in Los Angeles Superior Court, Case No. BS123818, challenging this decision.

Yoo further recounted that by letter dated March 12, 2008, the Department lifted the temporary withhold on PCH and refunded the difference between the total amount withheld and the overpayment amount calculated during the audit. Yoo did not receive his refund until April 2008, even though the State Controller had determined the overpayment amount in August 2007, when the State Controller issued its preliminary audit finding during the exit conference.

With regard to Roxbury, Yoo stated that in a letter dated May 15, 2007, the Department informed him that an audit concluded that Roxbury had been overpaid $20,460.58. Yoo attempted to pay this amount by having the Department deduct it from the money the Department had withheld from Roxbury. The Department refused to do so, after which Yoo sent the Department a check for the full amount.

Yoo also related that the Department had lifted the withhold sanctions imposed on his pharmacies and recently removed the temporary sanctions on all of his pharmacy numbers. The suspension sanctions were imposed for more than two years "on the basis that a 'temporary' suspension was necessary because of suspicious billings." The "suspensions were lifted without any sanctions or penalties being pursued," however. Yoo stated that he intended to challenge the alleged overpayment pertaining to PCH once the Department issued audit findings he could appeal.

In Yoo's view, he believed that "[a]t the very least" he "should be paid interest accruing on the excessively withheld money once State DHCS determined that it had been withholding sums excessively."[4] Interest thus "would accrue beginning August 2007, when the State Controller determined that the amount of any liability was approximately $1 million." Yoo "was not paid the difference between the $1 million and the millions of dollars being withheld until April 2008, a period of more than seven months."

The Department also accepted the trial court's invitation to make an evidentiary showing. Specifically, the Department, on October 16, 2008, presented the declaration of Jan Inglish (Inglish), the chief of the medical review branch for the audits and investigations division of the Department.

---

[4] Ideally, Yoo believed he "should be paid interest accruing thirty days after my Medi-Cal claims were received by State DHCS' Medi-Cal contractor, the Medi-Cal fiscal intermediary, or accruing from the date the warrants were issued but withheld."

Inglish related that in November 2004, the Medi-Cal Fraud Prevention Bureau (Bureau), an office within the Department, found reliable evidence that PCH was committing fraud on the Medi-Cal program. Specifically, the Bureau "determined that PCH demonstrated a pervasive pattern of submitting Medi-Cal reimbursement claims for a product (Ensure Plus Liquid) that was reportedly prescribed but supported by false prescriptions. This indicated that physician identity theft was occurring." As a result of the Bureau's finding, the Federal Bureau of Investigation (FBI), on March 7, 2005, opened an investigation into PCH's billing practices. The FBI's investigation remained open as of July 24, 2008.

Between April 7, 2005, and October 16, 2006, the Department captured $4,536,711 in PCH's withhold account. As of March 12, 2008, this amount remained in PCH's withhold account. Some time before March 12, the State Controller completed its audit and determined that PCH's liability to the Department was $1,069,982.

On March 12, 2008, the Department advised Yoo's counsel that the State Controller had not yet issued an audit demand but had estimated that the demand would be $1,069,982. On or around the same date, the Department lifted the temporary withhold on PCH and determined that PCH owed the Department $1,069,982. The Department retained this amount and returned the remaining amount, $3,466,729.90, to Yoo via two checks. Inglish explained that the "Department did not lift the temporary withhold on PCH until March 2008 because the Department was waiting for the results from the State Controller's Office's Audit for Recovery into PCH."

With regard to CNN, which formerly did business as Roxbury, Inglish observed that on August 29, 2005, Yoo submitted a change of ownership application concerning CNN. In October 2005, this application was referred "to Audits and Investigations for an onsite inspection of the pharmacy, because PCH had been placed on a 100% temporary withhold." "In January 2006, the Medical Review Branch of the Department conducted a pre-enrollment review of CNN. This review revealed that (1) CNN had been using the prior pharmacy owner's Medi-Cal provider number to bill the Medi-Cal Program since October 2003; (2) that there was a shortage of 744 Oxycontin 80 milligram SA tablets; (3) that CNN filed 18 forged Oxycontin 80 milligram SA tablet prescriptions; (4) that CNN submitted a claim for payment to Medi-Cal on February 7, 2006 for 90 Oxycontin 80 milligram SA tablets yet there was no record of the patient signing for the prescription and no record of the prescription number; and (5) that the

pharmacy made no effort to verify and/or validate any Schedule II drug prescriptions." As a result of these findings, the audits and investigations division of the Department recommended that Yoo's change of ownership application be denied.

Inglish further related that "[o]n June 9, 2006, the Department placed a 100% withhold suspension on the entity called Super Drugs Pico [doing business as] Roxbury Pharmacy (provider number PHA355460), because CNN was billing under this number" and because of the findings made by the medical review branch. Due to the withhold, $1,184.50 was captured. According to Inglish, this amount "had been fraudulently billed by CNN to Medi-Cal under provider number PHA355460."

Thereafter, on June 29, 2006, as result of the findings resulting from the Department's investigation of PCH and CNN and the FBI's investigation, the Department temporarily suspended and deactivated all of Yoo's Medi-Cal provider numbers. More than two years later, on July 25, 2008, the Department advised Yoo's counsel "that the Department had removed the temporary suspension on Mr. Yoo's 10 Medi-Cal provider numbers, including PCH's provider number." Inglish explained that the Department's decision "was based in part on information the Department received from the FBI on July 24, 2008." The content of that information is a mystery.

In May 2007, the Department sent Yoo a demand letter after determining that Yoo/CNN had been overpaid by Medi-Cal in the amount of $20,460.58. The following month, "PCH satisfied CNN's debt."

Inglish noted that on September 19, 2007, Yoo's change of ownership application was denied. Yoo, therefore, never received a provider number for CNN doing business as Roxbury. Inglish also declared that based on newly discovery evidence (which was not detailed), the Department had lifted the temporary withhold on CNN and would issue Yoo a check in the entire amount of the withhold, namely, $1,184.50.

On November 26, 2008, the trial court held its final hearing on the petition for writ of mandate, at which it granted the petition. Its reasoning is set forth in its minute order as follows: "Petitioner is a pharmacist who is entitled to reimbursement from respondent, the director of the Department of HealthCare Services of the State of California, for medications and other medical appliances furnished to Medi-Cal patients. The Department withheld payments due to the pharmacy under . . . [section 14107.11, subdivision (a)(2)] because it claimed that it had reliable evidence to show that the pharmacy had fraudulently billed the Department. Between April 7, 2005, and October 16, 2006, the Department 'captured' and withheld from the pharmacy the sum of

$4,536,711.00. It held the money until March of 2008, when it acknowledged that it could claim that it was overbilled only $1,069,982.00. On two dates in March of 2008, the Department therefore released to plaintiff the sum of $3,466,730.00. The pharmacy petitions herein for a writ of mandate commanding the Department to pay it interest on said sum.

"The Court has heretofore determined that the Department is liable for interest under [section 3287, subdivision (a)] of the Civil Code if the pharmacy can show that it had a right to recover that sum that vested on a particular day. [Citation.] It is undisputed that respondent had a monetary obligation to pay the principal sum to the pharmacy and that the principal constitutes a sum certain or capable of being made certain by calculation.

"The Medi-Cal statutes require that claims of providers be paid by the Department without undue delay. . . . [[S]ection 14104.3, subdivision (a)(3)] requires that the Department process and pay 99% of all claims for reimbursement submitted to it within a period of 90 days. . . . [S]ection 14043.65, however, provides for a longer period if the Department withholds funds from a provider and the provider administratively claims that the withholding is not supported by reliable evidence of fraud. Such a claim must be made within 60 days after the provider is notified of the withhold, and if the claim is made the Department has 90 days to decide whether the withhold should be upheld or reversed. The legislation therefore contemplates that the Department will have a maximum of 150 days in which to determine the amount to be withheld from the contractor, unless the Department can show, that under the facts of a particular case, a longer period is justified. No such evidence has been produced in this case. The Department has submitted a declaration by Jan Inglish, in an attempt to justify a longer period of withhold, but the declaration is vague as to the date upon which the Department knew that its own audit disclosed that it had withheld too much. There is nothing in the declaration that justifies a withhold longer than 150 days.

"The Department withheld a further sum of $1,184.50 from another pharmacy owned and operated by petitioner Yoo, on June 9, 2006, and still holds said amount, although Inglish acknowledges that it has lifted the withhold and will pay Mr. Yoo said principal sum. The Inglish declaration acknowledges that the sum was withheld from Yoo, because the former owners of the pharmacy had engaged in questionable practices. At the time the sum was withheld, however, Yoo had notified the Department of the change in ownership and had requested a new provider number in his own name. The evidence therefore established that such withhold was not justified from the beginning, and the pharmacy is entitled to interest on the sum of $1,184.50 from the time that it was withheld until the time that it is repaid.

"The pharmacy is entitled to interest on both sums at the rate of 7% per annum. [Citation.]

"Petitioner is entitled to a writ of mandate remanding the matter to the Department and commanding it to determine the amount of interest due on the sum of $3,466,730.00 from the dates upon which it was withheld to the dates upon which it was repaid less 150 days, and to determine the amount of interest due on the sum of $1,184.50 for the full period that it is withheld from petitioner. The Department is to determine the interest due at a rate of 7% per annum, and is to pay the amount so determined."

The trial court then ordered the Department's demurrer off calendar and directed petitioner to submit a proposed judgment and writ within 10 days.

On December 17, 2008, the court signed an order granting a peremptory writ of mandate. The court granted the petition for the reasons set forth in its November 26, 2008 minute order, which was incorporated into the order by reference. This appeal by the Department followed.

## DISCUSSION

*Standard of Review*

■ "Section 1085 of the Code of Civil Procedure authorizes a trial court to issue a writ of mandate to compel an act which the law specifically requires. A petitioner seeking a writ of mandate under this section is required to show the existence of two elements: a clear, present and usually ministerial duty upon the part of the respondent, and a clear, present and beneficial right belonging to the petitioner in the performance of that duty. [Citations.]" (*Bergeron v. Department of Health Services* (1999) 71 Cal.App.4th 17, 21–22 [83 Cal.Rptr.2d 481].) When reviewing a ruling on a petition for writ of mandate, the trial court's factual findings are subject to the substantial evidence standard. We exercise our independent judgment on purely legal questions, however. (*Wilson v. San Luis Obispo County Democratic Central Com.* (2009) 175 Cal.App.4th 489, 496 [96 Cal.Rptr.3d 332].)

*Section 14107.11 Differentiates Between the Collection of Medi-Cal Overpayments and Withheld Medi-Cal Payments and Neither Requires nor Permits the Payment of Interest on Withheld Medi-Cal Payments*

■ Subdivision (a)(1) of section 14107.11[5] governs Medi-Cal overpayments, while section 14107.11, subdivision (a)(2) and (3), govern withheld

---

[5] Section 14107.11 provides:
"(a) Upon receipt of reliable evidence . . . of fraud or willful misrepresentation by a provider as defined in Section 14043.1, under the Medi-Cal program or the commencement of a suspension under Section 14123, the department may do any of the following:

Medi-Cal payments. A provider may appeal the collection of overpayments pursuant to the procedure set forth in sections 14170 through 14178 (§ 14107.11, subd. (a)(1)), while a provider may appeal a withholding of payment pursuant to the procedure set forth in section 14043.65 (§ 14107.11, subd. (a)(3)).

■ When a provider appeals a withholding of payment, "[t]he appeal procedure shall not include a formal administrative hearing under the Administrative Procedure Act . . . ." (§ 14043.65, subd. (a).) Rather, the appeal procedure consists of a provider's filing (or submitting) a written appeal and supporting documents, which are then reviewed by the Department. The Department then decides whether to uphold, continue, or reverse in whole or in part the decision to withhold payments from the provider. (*Ibid.*)

On the other hand, when a provider appeals the collection of a Medi-Cal overpayment, the appeal procedure is distinctively different, in that it includes an impartial administrative hearing. When a noninstitutional provider appeals

"(1) Collect any Medi-Cal program overpayment identified through an audit or examination, or any portion thereof from any provider. Notwithstanding Section 100171 of the Health and Safety Code, a provider may appeal the collection of overpayments under this section pursuant to procedures established in Article 5.3 (commencing with Section 14170). Overpayments collected under this section shall not be returned to the provider during the pendency of any appeal and may be offset to satisfy audit or appeal findings if the findings are against the provider. Overpayments will be returned to a provider with interest if findings are in favor of the provider.

"(2) Withhold payment for any goods, services, supplies, or merchandise, or any portion thereof. The department shall notify the provider within five days of any withholding of payment under this section. The notice shall do all of the following:

"(A) State that payments are being withheld in accordance with this subdivision and that the withholding is for a temporary period and will not continue after it is determined that the evidence of fraud or willful misrepresentation is insufficient or when legal proceedings relating to the alleged fraud or willful misrepresentation are complete.

"(B) Cite the circumstances under which the withholding of the payments will be terminated.

"(C) Specify, when appropriate, the type or types of claims for which payment is being withheld.

"(D) Inform the provider of the right to submit written evidence that would be admissible under the administrative adjudication provisions of Chapter 5 (commencing with Section 11500) of Part 1 of Division 3 of Title 2 of the Government Code, for consideration by the department.

"(3) Notwithstanding Section 100171 of the Health and Safety Code, a provider may appeal a withholding of payment pursuant to Section 14043.65. Payments withheld under this section shall not be returned to the provider during the pendency of any appeal and may be offset to satisfy audit or appeal findings.

"(b) The director may, in consultation with interested parties, adopt regulations to implement this section as necessary . . .

"(c) For purposes of this section, 'provider' means any individual, partnership, group, association, corporation, institution, or entity, and the officers, directors, employees, or agents thereof, that provide services, goods, supplies, or merchandise, directly or indirectly, to a Medi-Cal beneficiary, and that has been enrolled in the Medi-Cal program."

the collection of a Medi-Cal overpayment, the appeal procedure consists of a formal administrative hearing where the provider and the Department may, among other things, present evidence before an impartial hearing officer and call and examine witnesses. (Cal. Code Regs., tit. 22, §§ 51016–51048.)

The Legislature's creation of one method of appeal for withheld payments and a different method of appeal for collected overpayments readily reveals its intent to treat Medi-Cal overpayments differently from withheld Medi-Cal payments that are ultimately disbursed to a provider. This conclusion is further buttressed by the fact that the Legislature expressly provided for the payment of interest on overpayments but not withheld payments.

■ During the pendency of the appeal involving the collection of an overpayment, the overpayment collected "shall not be returned to the provider . . . and may be offset to satisfy audit or appeal findings if the findings are against the provider." If it is determined on appeal that the overpayment, or any part thereof, must be returned to the provider, the Department is required to pay interest on the amount returned to the provider. (§ 14107.11, subd. (a)(1).)

Subdivision (g) of section 14171, the statute governing the overpayment appeal procedure for institutional providers, and section 51047, subdivision (e), of title 22 of the California Code of Regulations, a regulation governing the overpayment appeal procedure for noninstitutional providers, also expressly require the payment of interest on collected overpayments that are returned to the provider if the appeal is resolved in the provider's favor.

■ Just as with overpayments, withheld payments cannot be returned to the provider while an appeal is pending and may be offset to satisfy audit or appeal findings. (§ 14107.11, subd. (a)(3).) Unlike with overpayments, however, there is no express mandate to pay interest on withheld payments if the audit or appeal findings favor the provider. (*Ibid.*) Clearly, if the Legislature intended for the Department to pay interest on withheld payments, it would have so stated. " ' "[W]hen the Legislature has carefully employed a term in one place and has excluded it in another, it should not be implied where excluded." ' " (*Wasatch Property Management v. Degrate* (2005) 35 Cal.4th 1111, 1118 [29 Cal.Rptr.3d 262, 112 P.3d 647].) ■ Application of this rule of statutory construction compels the conclusion that the Legislature intentionally omitted an interest provision from subdivision (a)(3) of section 14107.11 thus reflecting its intent that such interest not be paid on Medi-Cal payments temporarily withheld.[6]

---

[6] To support their argument that they are entitled to interest on withheld Medi-Cal payments, petitioners rely on section 14171.6, subdivision (a)(2). Subdivision (a) of section 14171.6 provides: "(1) Any provider . . . that obtains reimbursement under this chapter to which it is not entitled shall be subject to interest charges or penalties as specified in this section. [¶]

*Civil Code Section 3287 Is Inapplicable and Thus the Trial Court's Reliance Thereon Was Misplaced*

The trial court's observation that the Department's statutory right to withhold funds temporarily pursuant to section 14107.11 does not mean it can hold such funds for as long as it pleases is well taken. Also well taken is the trial court's observation that to the extent the Department unreasonably withheld the funds by failing to disburse them in a reasonable and timely manner, petitioners suffered damage due to their inability to use those funds during the time they were unreasonably withheld. As we now explain, however, Civil Code section 3287 cannot be used to redress this perceived wrong.[7]

Civil Code section 3287 provides:

"(a) Every person who is entitled to recover damages certain, or capable of being made certain by calculation, and the right to recover which is vested in him upon a particular day, is entitled also to recover interest thereon from that day, except during such time as the debtor is prevented by law, or by the act of the creditor from paying the debt. This section is applicable to recovery of damages and interest from any such debtor, including the state or any county, city, city and county, municipal corporation, public district, public agency, or any political subdivision of the state.

(2) When it is established upon audit that the provider has not received reimbursement to which the provider is entitled, the department shall pay the provider interest assessed at the rate, and in the manner, specified in subdivision (g) of section 14171."

Petitioners' reliance on subdivision (a)(2) of section 14171.6 is misplaced. Section 14171.6 is part of division 9, part 3, chapter 7, article 5.3 of the Welfare and Institutions Code. Article 5.3 is entitled, "Audit, Appeal, and Recovery of Overpayments." There is no reference to withheld payments in section 14171.6. Thus, as the trial court correctly determined, it is inapplicable here.

In support of their claim to interest, petitioners also rely on *Vali Convalescent and Care Institutions v. Division of Health Care Financing* (Utah Ct.App. 1990) 797 P.2d 438. In this decision, the Utah Medicaid agency withheld Medicaid payments from a provider because of suspected Medicaid fraud. After the investigation ended without any criminal action, the agency agreed to return a portion of the previously withheld money but refused the provider's request for payment of interest on the amount returned. The court determined that the common law right to interest on an overdue debt required interest to be paid to the provider in such a situation in the absence of a statute providing for the payment of interest. (*Id.* at pp. 441–445.) *Vali Convalescent* has no persuasive value in this case. Our statutory scheme clearly provides that interest is not to be paid on temporarily withheld Medi-Cal payments.

[7] The trial court recognized that section 14107.11 does not authorize the payment of interest on temporarily withheld Medi-Cal payments that are timely disbursed to the provider. The trial court did not determine that Civil Code section 3287 authorized such interest payments either. It concluded only that Civil Code section 3287 supported the payment of interest on withheld payments to the extent that the Department delayed *unreasonably* in disbursing them.

"(b) Every person who is entitled under any judgment to receive damages based upon a cause of action in contract where the claim was unliquidated, may also recover interest thereon from a date prior to the entry of judgment as the court may, in its discretion, fix, but in no event earlier than the date the action was filed."

■ As the first sentence of subdivision (a) makes clear, Civil Code section 3287 is only triggered when a person is entitled to recover "damages." Damages are only recoverable when a person "suffers detriment from the unlawful act or omission of another." (Civ. Code, § 3281.)[8] Absent such damages, there is no basis for an award of interest.

■ Inasmuch as section 14107.11 authorizes the Department to withhold Medi-Cal payments temporarily, the initial act of withholding such payments does not constitute "an unlawful act or omission." Consequently, payments properly withheld pursuant to section 14107.11 are not "damages" within the meaning of Civil Code section 3287. Rather, it is money that is maintained in an account while the Department ascertains whether or not the provider's Medi-Cal claim or claims are legitimate. Any amount properly withheld that the Department ultimately determines must be paid to the provider is money to which the Medi-Cal provider is entitled by virtue of having filled prescriptions of Medi-Cal patients.

■ A Medi-Cal provider whose payments are withheld unquestionably suffers damage when the Department, after conducting the necessary investigation and audit and determining the amount to which the Medi-Cal claimant is entitled, fails to disburse the money to the provider in a timely fashion. The damage suffered, as the trial court observed, is the loss of use of the money. In their writ petition, however, petitioners did not seek to recover the Medi-Cal payments they claimed were unreasonably withheld and/or damages resulting from the loss of use of such untimely disbursed funds. Rather, they asked only for interest on the $3,466,729.90 the Department determined was properly claimed Medi-Cal payments. Since this amount cannot be characterized as "damages" as that term is used in Civil Code section 3287, petitioners are not entitled to interest on that amount pursuant to that statutory provision.[9]

---

[8] In its entirety, Civil Code section 3281 provides that "[e]very person who suffers detriment from the unlawful act or omission of another, may recover from the person in fault a compensation therefor in money, which is called damages." Civil Code section 3282 defines "detriment" as "a loss or harm suffered in person or property."

[9] We do not intend by anything we have said to suggest that the Department withheld petitioner's Medi-Cal payments for an unreasonable length of time under section 14107.11. We also do not attempt to define the point in time at which the Department's withholding ceases to be temporary. In light of our conclusion, these issues need not be resolved.

## DISPOSITION

The order granting the petition for writ of mandate is reversed. The parties are to bear their own costs of appeal.

Perluss, P. J., and Woods, J., concurred.

Respondents' petition for review by the Supreme Court was denied September 22, 2010, S184877.