[No. B224269. Second Dist., Div. Six. Feb. 14, 2011.]

GAIL WILSON, Plaintiff and Respondent, v.
SAN LUIS OBISPO COUNTY DEMOCRATIC CENTRAL COMMITTEE,
Defendant and Appellant.

COUNSEL

Saro G. Rizzo and Stewart D. Jenkins for Defendant and Appellant.

Andre, Morris & Buttery, Dennis D. Law and Christopher W. Carruthers for Plaintiff and Respondent.

**O**PINION

**YEGAN, Acting P. J.**—The San Luis Obispo County Democratic Central Committee (Committee) appeals from a postjudgment order denying its motion for reasonable attorney fees under the "private attorney general statute," Code of Civil Procedure section 1021.5 (section 1021.5). The Committee made the motion after prevailing in an appeal filed by Gail Wilson, respondent. This court decided the appeal in a published opinion, *Wilson v. San Luis Obispo County Democratic Central Com.* (2009) 175 Cal.App.4th 489 [96 Cal.Rptr.3d 332] (*Wilson I*).

Respondent was a member of the Committee. Litigation between the parties arose after the Committee had removed respondent from office. Based upon the recent California Supreme Court cases of *Adoption of Joshua S.* (2008) 42 Cal.4th 945 [70 Cal.Rptr.3d 372, 174 P.3d 192] (*Joshua S.*) and *Conservatorship of Whitley* (2010) 50 Cal.4th 1206 [117 Cal.Rptr.3d 342, 241 P.3d 840] (*Whitley*), we affirm the trial court's order insofar as it denies recovery of attorney fees incurred by the Committee in defending against respondent's claims concerning her removal from office and right to reinstatement. We reverse the order insofar as it denies recovery of attorney fees incurred by the Committee in defending against respondent's claims concerning the composition of the Committee's membership.

*Background*

In June 2006 respondent was appointed in lieu of election to the office of Committee member. In February 2007 respondent was removed from office by a two-thirds vote of Committee members. The removal was pursuant to the Committee's bylaws. "[Respondent] filed a petition for a writ of mandate to compel [the Committee] to reinstate her as a member . . . and 'to remove as Committee Members . . . all persons not duly elected under the *California Elections Code* or serving as ex officio members pursuant to [Elections Code sections] 7206 and 7211.' " (*Wilson I, supra,* 175 Cal.App.4th at p. 495, underscoring omitted.) If the relief requested had been granted, 22 out of 48 Committee members would have been removed from office.

The trial court denied the petition, and respondent appealed to this court. On appeal, respondent made four contentions: "(1) Committee bylaws authorizing her removal are invalid because they conflict with the Elections Code and are unconstitutionally vague; (2) her removal violated her First Amendment rights to free speech and political association; (3) her removal violated her constitutional right to procedural due process and her common law right to fair procedure; and (4) Committee bylaws unlawfully expanded the membership to include persons who are not statutorily authorized to

become members." (*Wilson I, supra*, 175 Cal.App.4th at p. 492.) We rejected these contentions and affirmed the trial court's judgment.

The Committee filed a section 1021.5 motion for reasonable attorney fees incurred in defending against respondent's action in the trial court and on appeal. The amount requested was $102,214.55. The trial court denied the motion. It relied on *Joshua S., supra*, 42 Cal.4th 945.

## *Section 1021.5*

"Under . . . section 1021.5, a litigant who acts as a private attorney general and is a successful party in the litigation may under certain circumstances recover attorney fees from the opposing parties." (*Whitley, supra*, 50 Cal.4th at pp. 1210–1211.) "[E]ligibility for section 1021.5 attorney fees is established when '(1) plaintiffs' action [or defendants' defense of that action] "has resulted in the enforcement of an important right affecting the public interest," (2) "a significant benefit, whether pecuniary or nonpecuniary has been conferred on the general public or a large class of persons" and (3) "the necessity and financial burden of private enforcement are such as to make the award appropriate." ' [Citation.]" (*Id.*, at p. 1214, fn. omitted.)[1]

In *Joshua S.*, Sharon gave birth to two children through artificial insemination. When both children were born, Sharon was in a committed relationship with Annette. While retaining her parental rights, Sharon consented to Annette's adoption of the children. When Sharon and Annette later separated, Annette filed a motion for an order of adoption. Sharon moved for court approval to withdraw her consent to adopt. Sharon argued that the form of second parent adoption sought by Annette was unlawful. The California Supreme Court held that this form of second parent adoption was lawful. Annette subsequently moved for attorney fees pursuant to section 1021.5. Annette argued that she was entitled to the fees because she "had prevailed in the Supreme Court on the second parent adoption issue, an issue of benefit to a large class of persons." (*Joshua S., supra*, 42 Cal.4th at p. 950.) The trial court awarded attorney fees to Annette, but the Court of Appeal reversed.

---

[1] Section 1021.5 provides in pertinent part: "Upon motion, a court may award attorneys' fees to a successful party against one or more opposing parties in any action which has resulted in the enforcement of an important right affecting the public interest if: (a) a significant benefit, whether pecuniary or nonpecuniary, has been conferred on the general public or a large class of persons, (b) the necessity and financial burden of private enforcement, or of enforcement by one public entity against another public entity, are such as to make the award appropriate, and (c) such fees should not in the interest of justice be paid out of the recovery, if any."

█ Our Supreme Court noted "that the litigation here did yield a substantial and widespread public benefit." (*Joshua S., supra*, 42 Cal.4th at p. 952.) But the court concluded that "even when an important right has been vindicated and a substantial public benefit conferred, and when a plaintiff's litigation has transcended her personal interest, . . . section 1021.5 was not intended to impose fees on an individual seeking a judgment that determines only his or her private rights, but who has done nothing to adversely affect the public interest other than being on the losing side of an important appellate case." (*Id.*, at p. 958.) The court found that Sharon "fits squarely into this category." (*Ibid.*) The court explained: ". . . Sharon was a private litigant with no institutional interest in the litigation, and the judgment she sought in the present case would have settled only her private rights and those of her children and Annette. She simply raised an issue in the course of that litigation that gave rise to important appellate precedent decided adversely to her." (*Id.*, at p. 957, fn. omitted.) "[S]ection 1021.5 attorney fees should not be imposed on parties such as [Sharon], an individual who has only engaged in litigation to adjudicate private rights from which important appellate precedent happens to emerge, but has otherwise done nothing to compromise the rights of the public or a significant class of people." (*Id.*, at p. 954.)

### Trial Court's Ruling

The trial court issued a seven-page ruling. The court concluded that "the elements of [section] 1021.5 appear to have been met." The court noted that "the litigation did vindicate important public rights of a political committee, and it conferred a significant benefit on the public in a published opinion upholding important First Amendment rights of political parties and their members." The court also recognized that respondent "was not merely seeking a determination of her private rights, but [was] also seeking broader relief with respect to removal of all [Committee] members who had not been duly elected under the Elections Code, as well as a ban on selecting new members except pursuant to the Elections Code." The court stated, "Clearly, [respondent's] First Amended Writ Petition tendered issues that went beyond her private rights and were intended to affect broader practices of the Central Committee in selecting its members."

Nevertheless, the trial court declared that it could not "conclude that [respondent's] litigation was 'adverse to the public interest' as that term is used in *Joshua S*." The court explained: "As an elected member of the Central Committee, [respondent] was fundamentally attempting to stay in office, and to enforce the Central Committee's compliance with applicable provisions of the Elections Code. [¶] . . . [T]here was nothing inherently 'wrong' with [respondent's] efforts to prevent her removal. . . . [¶] While arguably fitting

the description of 'gadfly,' the Court cannot find that [respondent] specifically engaged in any action that compromised important public rights, or thwarted important public policy. . . . Given the absence of any harmful conduct or practice, an award of over $100,000 in attorneys' fees against someone attempting to enforce the provisions of the Election[s] Code would be unfair, and would also have a chilling effect on meaningful participation in the political process. [Fn. omitted.]" Thus, the court concluded that respondent is not " 'the type of party on whom private attorney general fees were intended to be imposed.' " (Quoting *Joshua S., supra*, 42 Cal.4th at p. 953.)

### *Standard of Review*

A trial court's decision whether to award attorney fees under section 1021.5 is generally reviewed for abuse of discretion. (*Vasquez v. State of California* (2008) 45 Cal.4th 243, 251 [85 Cal.Rptr.3d 466, 195 P.3d 1049]; *RiverWatch v. County of San Diego Dept. of Environmental Health* (2009) 175 Cal.App.4th 768, 775–776 [96 Cal.Rptr.3d 362].) But where, as here, our published opinion provides the basis upon which attorney fees are sought, de novo or independent review is appropriate because we are in at least as good a position as the trial court to determine whether section 1021.5 fees should be awarded. (See *Laurel Heights Improvement Assn. v. Regents of University of California* (1988) 47 Cal.3d 376, 427 [253 Cal.Rptr. 426, 764 P.2d 278]; *New West Charter Middle School v. Los Angeles Unified School Dist.* (2010) 187 Cal.App.4th 831, 849, fn. 18 [114 Cal.Rptr.3d 504]; *Ebbetts Pass Forest Watch v. Department of Forestry & Fire Protection* (2010) 187 Cal.App.4th 376, 381 [114 Cal.Rptr.3d 351]; *Los Angeles Police Protective League v. City of Los Angeles* (1986) 188 Cal.App.3d 1, 7–9 [232 Cal.Rptr. 697]; *Wilkerson v. City of Placentia* (1981) 118 Cal.App.3d 435, 445 [173 Cal.Rptr. 294].)

Both parties agree that the standard of review is independent or de novo review. Accordingly, we apply this standard of review instead of the abuse of discretion standard. In any event, the result is the same under either standard of review.

### *Discussion*

As to respondent's contentions relating to her removal from office and right to reinstatement, we agree with the trial court that she is not "the type of party on whom private attorney general fees were intended to be imposed." (*Joshua S., supra*, 42 Cal.4th at p. 953.) As to these contentions, respondent is in a position similar to Sharon's position in *Joshua S.* In seeking to prevent Annette's adoption of Sharon's children, Sharon claimed that the form of second parent adoption sought by Annette was unlawful. In seeking her reinstatement to the office of Committee member, respondent claimed that the

Committee's bylaws authorizing her removal were unlawful and that her removal violated her constitutional rights. Just as Sharon's claim concerned her alleged private right to prevent the adoption of her children, respondent's claim concerned her alleged private right to reinstatement. Thus, like Sharon, respondent also falls within the category of "an individual who has only engaged in litigation to adjudicate private rights from which important appellate precedent happens to emerge, but has otherwise done nothing to compromise the rights of the public or a significant class of people." (*Id.*, at p. 954.) Respondent "has done nothing to adversely affect the public interest other than being on the losing side of an important appellate case." (*Id.*, at p. 958.)

The situation is different as to respondent's contentions that (1) bylaws unlawfully expanded the Committee's membership to include 22 persons who are not statutorily authorized to become members, and (2) these statutorily unauthorized members must be removed from office. The trial court recognized that these contentions "tendered issues that went beyond [respondent's] private rights and were intended to affect broader practices of the Central Committee in selecting its members." In making these contentions, respondent was purporting to represent the public rather than her private interest. In her points and authorities in support of her petition for a writ of mandate, respondent alleged that she was seeking "to protect the voters' right of association that was violated by a group of Committee Members 'packing' the Committee with non-elected and non-ex-officio members." Respondent further alleged: "The state has a legitimate 'weighty' interest in protecting the integrity of the election process by ensuring that only duly elected or appointed members become Committee Members. A writ must issue to remove these unqualified members."

**(3)** In *Joshua S.* our Supreme Court observed that "attorney fees have been awarded to those defending against suits by . . . those purporting to represent the public, that seek to expand the government's power to curtail important public rights. [Citation.]" (*Joshua S., supra,* 42 Cal.4th at p. 957.) To the extent that respondent's lawsuit sought to remove 22 Committee members and invalidate the bylaws authorizing their appointment, the lawsuit sought "to expand the government's power to curtail important public rights." (*Ibid.*) The lawsuit claimed that only persons authorized by the Elections Code could become Committee members. This claim did not seek to vindicate respondent's alleged private right to reinstatement as Committee member. Instead, it sought to interfere with the public right of political parties and their members to choose their leaders. In *Wilson I* we held that, "to the extent that Elections Code provisions prescribe the composition of Democratic Party county central committees, they cannot be upheld because they 'burden the First Amendment rights of political parties and their members without serving a compelling state interest.' " (*Wilson I, supra,* 175 Cal.App.4th at

pp. 504–505, quoting *Eu v. San Francisco Democratic Comm.* (1989) 489 U.S. 214, 233 [103 L.Ed.2d 271, 109 S.Ct. 1013].)

█ That respondent may have been acting in good faith is irrelevant. (*Joshua S., supra,* 42 Cal.4th at p. 958 ["We . . . hold only . . . that the party against whom such fees are awarded must have done or failed to do something, in good faith or not, that compromised public rights."].) Thus, as to respondent's contentions concerning the composition of the Committee's membership, the trial court erroneously determined that respondent is not "the type of party on whom private attorney general fees were intended to be imposed." (*Joshua S., supra,* 42 Cal.4th at p. 953.)

We next consider whether the Committee met the three criteria for awarding attorney fees pursuant to section 1021.5. The first two criteria are that the Committee's defense of respondent's action " ' "has resulted in the enforcement of an important right affecting the public interest" ' " and has conferred " ' "a significant benefit . . . on the general public or a large class of persons." ' " (*Whitley, supra,* 50 Cal.4th at p. 1214.) The Committee met these two criteria. By our published opinion, the Committee vindicated the important constitutional right of political parties and their members to choose their leaders. This vindication conferred a significant benefit on a large class of persons belonging to political parties.

█ The third criterion is that " ' "the necessity and financial burden of private enforcement are such as to make the award appropriate." ' " (*Whitley, supra,* 50 Cal.4th at p. 1214.) "[T]he necessity and financial burden requirement ' "really examines two issues: whether private enforcement was necessary and whether the financial burden of private enforcement warrants subsidizing the successful party's attorneys." ' [Citation.]" (*Id.,* at pp. 1214–1215.) The first prong of the criterion—the necessity of private enforcement—"has long been understood to mean simply that public enforcement is not available, or not sufficiently available. [Citations.]" (*Id.,* at p. 1217.) Private enforcement was necessary because the Committee was sued by respondent and no governmental agency was going to defend it. Thus, the Committee met the first prong of the third criterion.

"The second prong of the inquiry addresses the 'financial burden of private enforcement.' In determining the financial burden on litigants, courts have quite logically focused not only on the costs of the litigation but also any offsetting financial benefits that the litigation yields or reasonably could have been expected to yield." (*Whitley, supra,* 50 Cal.4th at p. 1215.) The court makes a " 'value judgment whether it is desirable to offer the bounty of a court-awarded fee in order to encourage litigation of the sort involved in this case. . . . [A] bounty will be appropriate except where the expected value of

the litigant's own monetary award exceeds by a substantial margin the actual litigation costs.' [Citation.]" (*Id.*, at p. 1216.)

 The Committee met the second prong of the third criterion because the litigation yielded no financial benefits to offset the Committee's litigation costs. The Committee's strong nonpecuniary motives to defend against respondent's lawsuit do not disqualify it from receiving section 1021.5 attorney fees. (*Whitley, supra,* 50 Cal.4th at p. 1211 ["a litigant's personal nonpecuniary motives may not be used to disqualify that litigant from obtaining fees under . . . section 1021.5"].)

 Accordingly, the matter must be remanded to the trial court for the purpose of awarding to the Committee the portion of its attorney fees reasonably incurred in defending against respondent's claims concerning the composition of the Committee's membership. In *Whitley, supra,* 50 Cal.4th at page 1226, our Supreme Court recognized that, when only a portion of an attorney's efforts meet the criteria of section 1021.5, the trial court "may legitimately restrict the award to only that portion . . . . [Citations.]" (See also *Hammond v. Agran* (2002) 99 Cal.App.4th 115, 136–137 [120 Cal.Rptr.2d 646], disapproved on other grounds in *Whitley, supra,* 50 Cal.4th at p. 1226, fn. 4 [§ 1021.5 attorney fees awarded on one issue and denied on other issues].)

 On remand the Committee shall also be entitled to an award of its attorney fees reasonably incurred in recovering section 1021.5 fees. (See *Whitley, supra,* 50 Cal.4th at pp. 1226–1227, fn. 5 ["it is well established that the attorney fees for work necessary to recover [section 1021.5] fees . . . are to be included in the fee award"].)

In *Wilson I* we ordered that the Committee, as the prevailing party, shall recover its costs on appeal. (*Wilson I, supra,* 175 Cal.App.4th at p. 505.) The Committee faults the trial court for not allowing this recovery. The Committee requests that we "direct the trial court to award [the Committee's] costs which it failed to do." But the trial court merely denied the Committee's section 1021.5 motion for attorney fees. We do not construe this denial as encompassing the Committee's costs. The Committee acknowledges that "[t]he trial court's ruling was silent on the issue of the [Committee's] request for costs." The Committee may address the costs issue upon remand. The trial court cannot disregard our order in *Wilson I* that the Committee recover its costs on appeal.

*Disposition*

The order is affirmed insofar as it denies recovery of attorney fees incurred by the Committee in defending against respondent's claims relating to her

removal from office and right to reinstatement. The order is reversed insofar as it denies recovery of attorney fees incurred by the Committee in defending against respondent's claims concerning the composition of the Committee's membership.

The matter is remanded to the trial court with directions to award to the Committee its reasonable trial and appellate attorney fees incurred in defending against respondent's claims concerning the composition of the Committee's membership. The trial court is further directed to award to the Committee its reasonable trial and appellate attorney fees for work necessary to establish its entitlement to section 1021.5 fees. We award costs on appeal to the Committee.

Coffee, J., and Perren, J., concurred.