[No. B232649. Second Dist., Div. One. May 24, 2012.]

SAMANTHA C., Plaintiff and Appellant, v.
STATE DEPARTMENT OF DEVELOPMENTAL SERVICES et al.,
Defendants and Respondents.

## COUNSEL

Law Offices of Carol A. Churchill and Carol A. Churchill for Plaintiff and Appellant.

Kamala D. Harris, Attorney General, Julie Weng-Gutierrez, Assistant Attorney General, Richard T. Waldow and S. Paul Bruguera, Deputy Attorneys General, for Defendant and Respondent State Department of Developmental Services.

Michelman & Robinson, Mona Z. Hanna and Robin James for Defendant and Respondent Harbor Regional Center.

## OPINION

**MALLANO, P. J.**—Samantha C. appeals from an order of the trial court denying her motion for attorney fees under Code of Civil Procedure section 1021.5.[1] Samantha contends that the court abused its discretion in denying her motion because she was a successful party in an action against the State Department of Developmental Services (DDS) and Harbor Regional Center (HRC) which resulted in a published opinion that enforced an important right affecting the public interest by defining the meaning of the terms " 'treatment' " and " 'solely' " for applicants seeking services under the Lanterman Developmental Disabilities Services Act (Lanterman Act). (Welf. & Inst. Code, § 4500 et seq.) In *Samantha C. v. State Dept. of Developmental Services*

---

[1] Undesignated statutory references are to the Code of Civil Procedure.

(2010) 185 Cal.App.4th 1462 [112 Cal.Rptr.3d 415] (*Samantha C.*), we held that in denying benefits to Samantha, HRC misinterpreted that part of Welfare and Institutions Code section 4512, subdivision (a) known as the "fifth category" and that under the correct interpretation, Samantha was entitled to benefits. In this appeal, we conclude that our holding resulted in the enforcement of an important right affecting the public interest and conferred a significant benefit on the general public and that the necessity and financial burden of private enforcement are such as to make an award appropriate and such fees should not be in the interest of justice paid out of the recovery.

Accordingly, we conclude Samantha is entitled to attorney fees under section 1021.5 and reverse the order with directions to the court to determine an appropriate fee award against HRC and DDS.

## BACKGROUND

The procedural and factual background leading up to the instant appeal has been well documented in *Samantha C.* In summary, in the underlying action Samantha C. appealed from a judgment denying her request for declaratory relief as to the validity of section 54000, subdivision (c)(1) and (2) of title 17 of the California Code of Regulations (regulation 54000(c)(1) and (2)) and denying her petition for a writ of mandate seeking to overturn determinations by HRC and DDS that she did not have a developmental disability and was therefore not entitled to services under the Lanterman Act. Welfare and Institutions Code section 4512, subdivision (a), includes within the definition of developmental disability: mental retardation, cerebral palsy, epilepsy, autism, and disabling . conditions closely related to, or requiring similar treatment to, mental retardation.[2] Samantha also sought to reverse the trial court's determination upholding the validity of provisions of regulation 54000(c)(1) and (2).[3] We affirmed that part of the judgment upholding the

---

[2] Welfare and Institutions Code section 4512, subdivision (a) provides: " 'Developmental disability' means a disability that originates before an individual attains age 18 years, continues, or can be expected to continue, indefinitely, and constitutes a substantial disability for that individual. As defined by the Director of Developmental Services, in consultation with the Superintendent of Public Instruction, this term shall include mental retardation, cerebral palsy, epilepsy, and autism. *This term shall also include disabling conditions found to be closely related to mental retardation or to require treatment similar to that required for individuals with mental retardation, but shall not include other handicapping conditions that are solely physical in nature.*" (Italics added.) The italicized sentence describes a category of eligibility for services known as the "fifth category." (*Mason v. Office of Admin. Hearings* (2001) 89 Cal.App.4th 1119, 1122 [108 Cal.Rptr.2d 102].)

[3] The pertinent provisions of regulation 54000(c) are paragraphs (1) and (2): "Developmental Disability shall not include handicapping conditions that are: [¶] (1) Solely psychiatric disorders where there is impaired intellectual or social functioning which originated as a result of the psychiatric disorder or treatment given for such a disorder. Such psychiatric disorders

validity of the regulation because it is consistent with Welfare and Institutions Code section 4512, subdivision (a).

But we reversed the trial court's determination that Samantha does not have a developmental disability under the Lanterman Act. The evidence was overwhelming that Samantha has a disabling condition. Samantha's mother testified that at the time of Samantha's birth, doctors told her that Samantha had been deprived of oxygen for about 30 minutes and that such deprivation can cause some brain damage and eyesight problems. Samantha's mother also testified that Samantha exhibited behavioral problems at age two and that Samantha was always placed in special education classes in school. Both Terrence W. Dushenko, Ph.D., and Rita S. Eagle, Ph.D., concluded that, based on Samantha's global assessment function (GAF) score of 45, Samantha had major impairments in adaptive functioning. Eagle's report characterized Samantha's functioning as in the range of someone who had mild mental retardation. Eagle admitted that both she and Dushenko had a "strong hypothesis" that the oxygen deprivation at birth affected Samantha's brain and that the existence of a neurocognitive disorder explained Samantha's condition more fully than a diagnosis of learning disabilities and attention deficit disorder. Although Eagle was unable to state conclusively that Samantha had a neurocognitive disorder as a result of birth hypoxia, Eagle's report stated that if Samantha's disabilities stemmed from birth complications and hypoxia, "they might all be subsumed under a diagnosis of Cognitive Disorder Not Otherwise Specified, indicating that they are secondary to a medical condition."

We concluded that the only reasonable inference on the record was that Samantha suffered birth injuries which affected her brain and that her cognitive disabilities and adaptive functioning deficits stemmed, wholly or in part, from such birth injuries. Samantha thus had a "disabling condition" within the meaning of the fifth category. As Samantha's condition was not "solely physical in nature," she was not excluded from Lanterman Act eligibility by the provision in Welfare and Institutions Code section 4512, subdivision (a), which excludes "handicapping conditions that are solely physical in nature." Nor did Samantha fall within the exclusions in regulation

include psycho-social deprivation and/or psychosis, severe neurosis or personality disorders even where social and intellectual functioning have become seriously impaired as an integral manifestation of the disorder. [¶] (2) Solely learning disabilities. A learning disability is a condition which manifests as a significant discrepancy between estimated cognitive potential and actual level of educational performance and which is not a result of generalized mental retardation, educational or psycho-social deprivation, psychiatric disorder, or sensory loss." (Reg. 54000(c)(1), (2).)

54000(c), which exclude from the definition of developmental disability "psychiatric disorders where there is impaired intellectual or social functioning which originated as a result of the psychiatric disorder" or its treatment. The evidence established that Samantha's impaired intellectual and social functioning originated in early childhood and resulted from a hypoxic birth episode. There was no substantial evidence that her disabilities "originated as a result of the psychiatric disorder or treatment given for such a disorder." (Reg. 54000(c)(1).) And the experts all agreed that Samantha did not suffer *solely* from learning disabilities, thus making inapplicable regulation 54000(c)(2).

We next concluded that because the only reasonable inference from the evidence was that Samantha's disabling condition required treatment similar to the treatment needs of individuals with mental retardation, the evidence was insufficient to support the trial court's finding to the contrary.

Katie Hornberger, an attorney and advocate for people with developmental disabilities, testified at great length that her clients with mental retardation and with fifth category eligibility both needed many of the same kinds of treatment, such as services providing help with cooking, public transportation, money management, rehabilitative and vocational training, independent living skills training, specialized teaching and skill development approaches, and supported employment services. The testimony was undisputed that Samantha needed all of these types of treatment.

We concluded that an HRC team member's testimony that Samantha needed psychological or mental health services and Eagle's testimony that Samantha was too intelligent to be among those with mental retardation did not disqualify Samantha from fifth category eligibility because persons who are eligible for Lanterman Act services obtain an individualized treatment plan. There was no requirement that Samantha receive treatment—for example, independent living skills—training in the same program as individuals with mental retardation. And a need for psychological or mental health services does not disqualify a person from fifth category eligibility if the person is otherwise eligible.

We determined that Hornberger's testimony that mentally retarded individuals need different educational strategies than those with learning disabilities "does not support the conclusion that Samantha [was] ineligible for services under the fifth category." (*Samantha C., supra*, 185 Cal.App.4th at p. 1494.) As set out in Welfare and Institutions Code section 4512, subdivision (a), fifth category eligibility depends on the similarity in the *treatment* required for an individual with a disabling condition and individuals with mental retardation. The statute does not require similarity in the educational

or teaching methods. Even among the class of those individuals with mental retardation, there may be some individuals who are capable of learning to a greater extent than others, or who require different educational and teaching strategies. Because educational and teaching methods may differ even among those with mental retardation, the reference in Welfare and Institutions Code section 4512, subdivision (a) to "treatment similar to that required for individuals with mental retardation" cannot refer to educational or teaching *methods*, but to the *types of treatment* required, such as independent living skills training. As Hornberger's testimony regarding the treatment needs of individuals with mental retardation and individuals qualifying under the fifth category was undisputed, the only reasonable inference to be drawn from this record was that Samantha required treatment similar to that required by individuals with mental retardation. Samantha was thus eligible for services under the second prong of the fifth category.

We affirmed that part of the judgment upholding regulation 54000(c)(1) and (2) and reversed that part of the judgment denying the petition for a writ of mandate and directed the trial court on remand to enter judgment granting the petition for a writ of mandate, directing DDS to set aside its decision adopting the decision of the administrative law judge and to issue a new decision finding that Samantha is developmentally disabled within the meaning of Welfare and Institutions Code section 4512, subdivision (a), and requiring HRC to provide services to Samantha pursuant to the Lanterman Act. We ordered that in the interests of justice, the parties were to bear their own costs on appeal.

On December 17, 2010, Samantha filed a motion for attorney fees under section 1021.5, requesting that the trial court order DDS and HRC to reimburse Samantha's legal fees in the amount of "not less than $243,817.50." DDS joined in HRC's opposition to Samantha's motion for attorney fees. After a hearing, the court issued an order on March 9, 2011, denying Samantha's motion for attorney fees. Samantha appealed.

## DISCUSSION

*Samantha is entitled to attorney fees under section 1021.5.*

Samantha contends that the trial court abused its discretion in denying her motion for attorney fees because she was a successful party in an action against DDS and HRC which resulted in a published opinion that enforced an important right affecting the public interest by defining the meaning of the terms " 'treatment' " and " 'solely' " for applicants seeking services under the Lanterman Act. In *Samantha C.*, we held that in denying benefits to Samantha, HRC misinterpreted that part of Welfare and Institutions Code

section 4512, subdivision (a) known as the fifth category and that under the correct interpretation, Samantha was entitled to benefits. In this appeal, we conclude that our holding resulted in the enforcement of an important right affecting the public interest and conferred a significant benefit on the general public and that the necessity and financial burden of private enforcement are such as to make an award appropriate and such fees should not be in the interest of justice paid out of the recovery. Accordingly, we conclude Samantha is entitled to attorney fees under Code of Civil Procedure section 1021.5.

■ "[S]ection 1021.5 is an exception to the general rule in California, commonly referred to as the American rule and codified in section 1021, that each party to a lawsuit must ordinarily pay his or her own attorney fees." (*Adoption of Joshua S.* (2008) 42 Cal.4th 945, 954 [70 Cal.Rptr.3d 372, 174 P.3d 192].) Section 1021.5 provides in pertinent part: "Upon motion, a court may award attorneys' fees to a successful party against one or more opposing parties in any action which has resulted in the enforcement of an important right affecting the public interest if: (a) a significant benefit, whether pecuniary or nonpecuniary, has been conferred on the general public or a large class of persons, (b) the necessity and financial burden of private enforcement, or of enforcement by one public entity against another public entity, are such as to make the award appropriate, and (c) such fees should not in the interest of justice be paid out of the recovery, if any." ■ "The burden is on the claimant to establish each prerequisite to an award of attorney fees under section 1021.5." (*Ebbetts Pass Forest Watch v. Department of Forestry & Fire Protection* (2010) 187 Cal.App.4th 376, 381 [114 Cal.Rptr.3d 351]; see *id.* at pp. 387–388.)

"A trial court's decision whether to award attorney fees under section 1021.5 is generally reviewed for abuse of discretion. (*Vasquez v. State of California* (2008) 45 Cal.4th 243, 251 [85 Cal.Rptr.3d 466, 195 P.3d 1049]; [citation].) But where, as here, our published opinion provides the basis upon which attorney fees are sought, de novo or independent review is appropriate because we are in at least as good a position as the trial court to determine whether section 1021.5 fees should be awarded. (See *Laurel Heights Improvement Assn. v. Regents of University of California* (1988) 47 Cal.3d 376, 427 [253 Cal.Rptr. 426, 764 P.2d 278]; [citations].)" (*Wilson v. San Luis Obispo County Democratic Central Com.* (2011) 192 Cal.App.4th 918, 924 [121 Cal.Rptr.3d 731].)

■ "[I]n determining whether a party is successful" for purposes of section 1021.5, "the court must critically analyze the surrounding circumstances of the litigation and pragmatically assess the gains achieved by the action." (*Ebbetts Pass Forest Watch v. Department of Forestry & Fire*

*Protection, supra*, 187 Cal.App.4th at p. 382.) Samantha claims she was a successful party in her action against DDS and HRC, citing *Adoption of Joshua S., supra*, 42 Cal.4th at page 957, for the proposition that "the parties against whom attorney fees should be assessed should be those responsible for the policy or practice adjudged to be harmful to the public interest." Thus, she urges that in addition to HRC, which she claims refused services to her, DDS is an opposing party to Samantha's action in which she successfully sought relief because DDS "is the party statutor[ily] responsible for assuring [HRC] operate[s] in compliance with Regulations . . . and provide[s] services and supports to consumers in compliance with the principles and specifics [of] Welfare and Institutions Code section 4434." (Italics omitted.) DDS urges on appeal that Samantha was not a successful party with respect to DDS because Samantha did not prevail on her claim that DDS adopted invalid regulations and it was HRC that determined Samantha was ineligible for services. But we note that DDS merely joined in HRC's opposition to Samantha's motion for attorney fees below and therefore cannot now contend that the motion "should have been against HRC only."

The trial court determined that Samantha was not entitled to attorney fees because she did not meet the requirement of section 1021.5 that the action confer a significant benefit on the general public or a large class of persons. As we explain, we disagree. We held in the underlying appeal that although regulation 54000(c)(1) and (2) is not invalid on its face, HRC had misinterpreted the meaning of certain parts of Welfare and Institutions Code section 4512, subdivision (a)'s language when it denied Samantha benefits under the Lanterman Act. "[T]he only reasonable inference" that is consistent with the flexibility required by Welfare and Institutions Code section 4512, subdivision (a)'s "general and somewhat imprecise" provisions, we held, is that the evidence relied on by HRC to deny benefits to Samantha under that part of Welfare and Institutions Code section 4512, subdivision (a) known as the fifth category "does not support the conclusion that Samantha is ineligible for services under the fifth category." (*Samantha C., supra*, 185 Cal.App.4th at pp. 1484, 1494.)

It was HRC's misinterpretation of Welfare and Institutions Code section 4512, subdivision (a)'s provision—and not merely a mistaken conclusion about the evidence offered on Samantha's behalf—that led to its erroneous determination. The evidence that HRC found to be insufficient to require benefits for Samantha was—when Welfare and Institutions Code section 4512, subdivision (a) is properly interpreted—in fact sufficient to require that those services be provided. When Welfare and Institutions Code section 4512, subdivision (a) is properly interpreted, we held, "fifth category eligibility depends on the similarity in the *treatment* required for an individual with a disabling condition and individuals with mental retardation"—not similarity in the educational or teaching methods. (*Samantha C., supra*, 185 Cal.App.4th

at p. 1494.) On that basis we reversed the trial court's denial of Samantha's writ petition and directed it to issue a new decision finding that Samantha is developmentally disabled within the meaning of Welfare and Institutions Code section 4512, subdivision (a) and to require HRC to provide Samantha with Lanterman Act services. (*Samantha C.*, at p. 1495.)

Although our underlying decision was phrased in terms of substantial evidence, it rested on determinations of statutory and regulatory construction that were not specific only to Samantha. Rather, we concluded that HRC had wrongly interpreted Welfare and Institutions Code section 4512, subdivision (a), and that its statutory misinterpretation had led to the erroneous denial of relief to Samantha. Our published decision articulated our determination that the statutory construction on which our decision rested—contrary to the interpretation applied by HRC—is the only reasonable interpretation that is consistent with Welfare and Institutions Code section 4512, subdivision (a)'s provisions. (*Samantha C., supra*, 185 Cal.App.4th at p. 1494.)

From this we conclude that the erroneous statutory interpretation that had led to HRC's denial of benefits to Samantha had also been applied to all other applicants who had sought benefits on similar grounds in the past, and that, but for Samantha's action and our ruling, HRC's erroneous interpretation would have continued to be applied to those who would do so in the future.[4] The Legislature has clearly identified the law's purpose as the provision of services to all those with developmental disabilities—"[a]ffecting hundreds of thousands of children and adults directly," and with an important impact on many others. (Welf. & Inst. Code, § 4501.) Although the record does not reflect the number of individuals that might be directly benefited by our decision in *Samantha C.*, nevertheless, by defining the class of benefited persons to include those in Samantha's position, the Legislature has demonstrated its determination that such a need exists, in a quantity that is of sufficient size to require its legislative protection. In light of the Legislature's statement of purpose, we cannot justifiably conclude that such a group of potential claimants is nonexistent, or even minimal.

■ Section 1021.5, subdivision (a), provides that an award of attorney fees to the prevailing party is justified in an action resulting in the enforcement of an important right affecting the public interest, if "a significant benefit . . . has been conferred on the general public," or (not "and") on "a large class of persons." ■ Here, we believe the record shows without

---

[4] According to its Web site (<www.harborrc.org> [as of May 24, 2012]), the HRC is a not-for-profit corporation contracting with the State of California to provide services pursuant to the Lanterman Act to persons with developmental disabilities living in the Torrance, Harbor, Bellflower, and Long Beach health districts of Los Angeles County, with a client caseload of 10,976 in 2011.

dispute that Samantha's action resulted in the enforcement of an important right affecting the public interest, conferring a significant benefit on the general public.

■ We further conclude that this matter meets section 1021.5's requirement that the necessity and financial burden of private enforcement are such as to make the award appropriate. "As has been observed, the necessity and financial burden requirement ' "really examines two issues: whether private enforcement was necessary and whether the financial burden of private enforcement warrants subsidizing the successful party's attorneys." ' " (*Conservatorship of Whitley* (2010) 50 Cal.4th 1206, 1214 [117 Cal.Rptr.3d 342, 241 P.3d 840] (*Whitley*).) The necessity of private enforcement is clear where, as here, the action was directed against DDS and HRC, the government agencies charged by the Legislature with enforcing the Lanterman Act. (See *Woodland Hills Residents Assn., Inc. v. City Council* (1979) 23 Cal.3d 917, 941 [154 Cal.Rptr. 503, 593 P.2d 200] [necessity of private enforcement clear where action proceeded against the only government agencies bearing responsibility for subdivision approval process].) The issue of the financial burden of private enforcement focuses on the financial burdens and incentives involved in bringing the lawsuit. (*Whitley, supra*, at p. 1215.) An award " ' "is appropriate when the cost of the claimant's legal victory transcends his personal interest, that is, when the necessity for pursuing the lawsuit placed a burden on the plaintiff 'out of proportion to his individual stake in the matter.' [Citation.]" ' [Citation.]" (*Ibid.* [conservator's subjective motivation to challenge trial court order granting regional center's request to move her brother to a different facility does not disqualify her from § 1021.5 fees].) We conclude that the necessity of pursuing the lawsuit placed a burden on Samantha out of proportion to her individual stake in the matter. We also determine that attorney fees should not in the interest of justice be paid out of the recovery, which was nonexistent.

We reverse the trial court's denial of Samantha's request for attorney fees under section 1021.5 and remand the matter for determination of an appropriate fee award against HRC and DDS.

## DISPOSITION

The trial court's order denying Samantha C.'s motion for attorney fees under Code of Civil Procedure section 1021.5 is reversed, and the matter is remanded for determination of an appropriate fee award against Harbor

Regional Center and the State Department of Developmental Services. Samantha C. is entitled to costs on appeal.

Chaney, J., and Johnson, J., concurred.

The petition of respondent Harbor Regional Center for review by the Supreme Court was denied October 10, 2012, S204386.