Filed 11/21/14  Samantha C. v. State Dept. of Developmental Services CA2/1

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| SAMANTHA C., | B250669 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BS111665) |
| v. | |
| STATE DEPARTMENT OF DEVELOPMENTAL SERVICES et al., | ORDER MODIFYING OPINION AND DENYING REHEARING [NO CHANGE IN JUDGMENT] |
| Defendants and Respondents. | |

THE COURT:

It is ordered that the opinion filed herein on October 27, 2014, be modified as follows:

On page 3 in the second sentence of the first paragraph under the heading **B.  The motion for attorney fees and hearing,** the billing rate "$300" is changed to "$350" so the sentence reads:

Samantha's motion requested fees based on a billing rate of $395 per hour for Beltran and a billing rate of $350 per hour for Churchill.

There is no change in the judgment.

Appellant's petition for a rehearing is denied.


CHANEY, Acting P. J.          JOHNSON, J.          MILLER, J.*

_____

   **\*** Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

Filed 10/27/14  Samantha C. v. State Dept. of Developmental Services CA2/1 (unmodified version)
**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| SAMANTHA C., | B250669 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BS111665) |
| v. | |
| STATE DEPARTMENT OF DEVELOPMENTAL SERVICES et al., | |
| Defendants and Respondents. | |

APPEAL from an order of the Superior Court of Los Angeles County.  James C. Chalfant, Judge.  Affirmed.

Law Offices of Carol A. Churchill and Carol A. Churchill for Plaintiff and Appellant.

Kamala D. Harris, Attorney General, Julie Weng-Gutierrez, Senior Assistant Attorney General, Richard T. Waldow, Supervising Deputy Attorney General, and S. Paul Bruguera, Deputy Attorney General, for Defendants and Respondents State Department of Developmental Services and Santi J. Rogers, as Director, etc.

Michelman & Robinson, Mona Z. Hanna, Robin James and Jeffrey D. Farrow for Defendant and Respondent Harbor Regional Center.

After successfully obtaining benefits from Harbor Regional Center (HRC) for a developmental disability, Samantha C. made a motion for an award of $243,817.50 in attorney fees against HRC and the State Department of Developmental Services (DDS) under Code of Civil Procedure section 1021.5.[1]  Samantha appealed from the trial court's subsequent denial of her motion for attorney fees.  Because she was a successful party in an action which enforced an important right affecting the public interest, we concluded Samantha was entitled to attorney fees under section 1021.5 and reversed the order with directions to the court to determine an appropriate fee award.

On remand, Samantha made a motion for attorney fees against HRC and DDS in the amount of $804,450.33.  Samantha now appeals from the trial court's subsequent order awarding Samantha $284,108 in attorney fees, contending the court abused its discretion:  (1  in denying Samantha's aunt and attorney, Carol A. Churchill, fees for purported legal services rendered at administrative hearings below; (2) in applying a billable hourly rate rather than a market rate as a lodestar; (3) in refusing to apply a multiplier factor to the lodestar; (4) by treating subcontracted legal fees as nonreimbursable costs; and (5) by failing to reduce the attorney fees awarded to Samantha's attorney, Thomas Beltran, by $135,009.

We conclude the trial court did not abuse its discretion in making the award of attorney fees and affirm the order.

## BACKGROUND

### A.  Administrative hearing and appeals

The procedural and factual background leading up to the instant appeal has been well documented in *Samantha C. v. State Dept. of Developmental Services* (2010) 185 Cal.App.4th 1462 (*Samantha C. I*) and *Samantha C. v. State Dept. of Developmental Services* (2012) 207 Cal.App.4th 71 (*Samantha C. II*).  In brief, Samantha's applications for HRC services were denied by HRC in 2004 and 2006.  (*Samantha C. I*, at pp. 1471–1472.)  Samantha requested and received a hearing before an administrative law judge

---

[1] Undesignated statutory references are to the Code of Civil Procedure.

(ALJ) to contest HRC's denial of services. (*Id.* at p. 1472.) After an administrative hearing, held over the course of several days in October 2006 through May 2007, the ALJ concluded Samantha was not eligible for HRC services. (*Id.* at p. 1478.) Samantha filed a petition for a writ of mandate, damages, and declaratory relief on October 23, 2007, in the trial court. (*Id.* at p. 1480.) The trial court upheld the validity of the challenged regulations and denied Samantha's petition for a writ of mandate. (*Ibid.*) Samantha appealed. In *Samantha C. I*, we held that in denying benefits to Samantha, HRC misinterpreted that part of Welfare and Institutions Code section 4512, subdivision (a) known as the fifth category, and under the correct interpretation, Samantha was entitled to benefits. (*Samantha C. I*, *supra*, at p. 1494.)

Subsequently, Samantha filed a motion on December 17, 2010, for attorney fees under section 1021.5, requesting the trial court order DDS and HRC to reimburse Samantha's legal fees in an amount "'not less than $243,817.50.'" (*Samantha C. II*, *supra*, 207 Cal.App.4th at p. 77.) After the court denied Samantha's motion for attorney fees, Samantha appealed. In *Samantha C. II*, we held that our holding in *Samantha C. I* resulted in the enforcement of an important right affecting the public interest and conferred a significant benefit on the general public and the necessity and financial burden of private enforcement are such as to make an award appropriate and such fees should not be in the interest of justice paid out of the recovery. (*Samantha C. II*, at pp. 80–81.) We reversed the court's order denying Samantha's motion for attorney fees under section 1021.5 and remanded the matter for a determination of an appropriate fee award against HRC and DDS.

## B.  The motion for attorney fees and hearing

On remand, Samantha filed a motion on February 21, 2013, for attorney fees in the amount of $804,450.33. Samantha's motion requested fees based on a billing rate of $395 per hour for Beltran and a billing rate of $300 per hour for Churchill. The motion attached declarations by two attorneys who practiced business litigation, personal injury, and medical malpractice at an hourly rate of $325 per hour. In opposition to the motion, HRC submitted a declaration from its attorney stating she had represented HRC on more

3

than 120 matters and had represented several other regional centers. She billed her services at an hourly rate of $195 per hour until December 31, 2012, at which point her rate increased to $225 per hour.

At the hearing on the motion, HRC argued Churchill had not acted as Samantha's attorney in the administrative hearing. Rather, Churchill had described herself as Samantha's advocate or representative, and not as her attorney, in written documents and orally before the ALJ. HRC referred to a dialogue between Churchill and the ALJ, in which Churchill asked, "How does it work?" and "When somebody doesn't have a lawyer representing them in terms of presenting evidence?" Churchill argued she had acted as Samantha's attorney, stating she had lodged with the trial court the administrative record, which shows she had appeared as Samantha's attorney. Referring to her declaration and exhibits filed in support of the motion, Churchill explained she had calculated the hours she had spent on the administrative hearing by reviewing her files and records and estimating the number of hours it took to complete each task. The court examined the declaration and exhibits and denied Samantha's request for Churchill's attorney fees in the administrative hearing based on Churchill's failure to keep contemporaneous records, stating "you can't make records four [*sic*] years after the fact and expect the court to award fees on that basis." The court explained under *Beach Colony II v. California Coastal Com.* (1985) 166 Cal.App.3d 106 (*Beach*) attorneys fees incurred in administrative hearings are not recoverable under section 1021.5. As to whether Churchill acted as Samantha's attorney in the administrative hearings, the court stated, "I guess it's up in the air."

Churchill and Beltran argued Beltran's rate should be set at his purported "market rate" of $425 per hour. The trial court declined to set Beltran's rate at $425 per hour, noting Samantha's motion had requested attorney fees at the rate of $395 per hour for Beltran. Beltran responded, "All right." Beltran also explained he had submitted $15,000 for costs based on research and editing by "another attorney." The court noted Beltran had presented the work as "brief editing services" in his cost bill and not as attorney fees. Beltran stated, "It's in the costs. I didn't—I actually—Ms. Churchill came

4

back from all her issues and so she did this case." The court stated it would not award costs on a motion under section 1021.5, although, "That doesn't mean you can't get costs, but you've got to get them through a memorandum of costs."

The trial court determined Churchill's reasonable rate was $250 per hour. Initially, the court established the lodestar for Churchill at $13,500. After hearing Churchill's argument, the court increased the number of Churchill's hours and changed the lodestar to $67,687.50. Churchill's lodestar figure, initially $13,500, was increased to $67,687.50.

## C. The statement of decision

The trial court ordered an award of $284,108 in attorney fees to Samantha to be paid jointly and severally by HRC and DDS. In its tentative statement of decision, which was orally modified and adopted as the court's order, the court determined as follows.

Samantha's request for $395 per hour for Beltran's attorney fees was "reasonable for an attorney of Beltran's skill and experience in the market." Beltran's normal hourly market rate for clients in regional center cases was $425 per hour. Beltran's agreement with Churchill was vague. "Beltran agreed to charge Churchill at his normal hourly rate until an unstated cap was reached, and then to bill at a reduced hourly rate. It is unclear what Beltran actually charged and what Churchill actually paid. Exhibit D shows he billed a total of 557.90 hours and charged $137,451.50, and Churchill may not have paid him any more. [¶] Nonetheless, the inference from this murky evidence is that Beltran agreed to reduced fees with the balance of his fees to be recoverable, if at all, under section 1021.5. HRC is not entitled to reduce the fees simply because they were never paid." Ten hours of clerical work not recoverable as attorney fees were deducted from the 557.90 hours, resulting in a lodestar for Beltran of $216,420.50.

Churchill, who "admit[ted]" she was an estate planning and probate lawyer and not an expert in administrative or developmental disability law, sought an hourly rate of $350 that "was at the high end of her rates in 2008." HRC presented evidence its developmental disability lawyers charged $195 per hour. Churchill's claimed rate of $350 per hour was "excessive for someone unfamiliar with this work" and Churchill, who

5

appeared to work out of her residence, did not provide information regarding whether she was supported by office staff or was charging legal time for her own secretarial work. A reasonable rate for Churchill's work was $250 per hour.

A split of authority exists as to whether section 1021.5 attorney fees are recoverable for administrative proceedings. The analysis and conclusion of *Beach*, *supra*, 166 Cal.App.3d 106, is persuasive. The plain language of section 1021.5 controls and, therefore, an "'action'" does not include administrative proceedings and attorney fees are not recoverable in administrative proceedings. The conclusion in *Best v. California Apprenticeship Council* (1987) 193 Cal.App.3d 1448 (*Best*) that attorney fees are recoverable in administrative proceedings has been criticized in *Gilliland v. Medical Board* (2001) 89 Cal.App.4th 208 (*Gilliland*) and by the same court that issued *Best* in *Ciani v. San Diego Trust & Savings Bank* (1994) 25 Cal.App.4th 563 (*Ciani*). *Edna Valley Watch v. County of San Luis Obispo* (2011) 197 Cal.App.4th 1312 (*Edna*) improperly "modified the American rule that each side bears its own attorney's fee only to the extent that attorney's fees incurred in the lawsuit are recoverable. Attorneys' fees under section 1021.5 are limited to those incurred in a court action, not in an administrative proceeding." The trial court noted, had Samantha prevailed at the administrative hearing, she would not have recovered her attorney fees incurred in that process. Therefore, if she were to be awarded attorney fees for the administrative hearing after prevailing in a lawsuit, she would receive a windfall.

Also, Churchill did not act as Samantha's attorney in the administrative proceeding, but appeared as her "'advocate'" or "'representative.'" She did not identify herself as Samantha's attorney during the administrative hearing and did not keep contemporaneous records of her time.

It was not appropriate to enhance the lodestar by a multiplier. While Samantha requested the lodestar be multiplied by two for Churchill and Beltran, she presented "no real analysis" of the factors that determine whether a multiplier is appropriate, including "the novelty and difficulty of the litigation, the extent to which the litigation precluded other employment by the attorneys, the contingent nature of the fee award, the fact that

6

an award against the state would ultimately fall on the taxpayers, the fact that the attorneys received public and charitable funding for the purpose of bringing lawsuits of the character involved, and the fact that the moneys awarded would inure not to the benefit of the individual lawyers but to the organizations employing them. <u>Ramos v. Countrywide Home Loans, Inc</u>. (2000) 82 Cal.App.4th 615, 622-23." Although Beltran's work was novel in *Samantha C. I*, he operated on a limited contingency. Churchill operated on a true contingency during the period she acted as a lawyer, but her work was not novel in *Samantha C. II*. Neither Beltran nor Churchill claimed their work in this case precluded their work on other matters. And taxpayers would be required to fund the award.

Samantha's request for an award of costs was denied because costs are not recoverable pursuant to a motion for section 1021.5 attorney fees. Samantha previously had been awarded $841 in costs for *Samantha C. II*. Samantha appealed.

### DISCUSSION

**The trial court did not abuse its discretion in making its award of attorney fees**

Samantha makes numerous arguments contending the trial court abused its discretion in making its award of attorney fees. As we explain, we disagree with her arguments.

**1. Section 1021.5 attorney fees**

"[S]ection 1021.5 is an exception to the general rule in California, commonly referred to as the American rule and codified in section 1021, that each party to a lawsuit must ordinarily pay his or her own attorney fees." (*Adoption of Joshua S*. (2008) 42 Cal.4th 945, 954.) Section 1021.5 provides in pertinent part: "Upon motion, a court may award attorneys' fees to a successful party against one or more opposing parties in any action which has resulted in the enforcement of an important right affecting the public interest if: (a) a significant benefit, whether pecuniary or nonpecuniary, has been conferred on the general public or a large class of persons, (b) the necessity and financial burden of private enforcement, or of enforcement by one public entity against another public entity, are such as to make the award appropriate, and (c) such fees should not in

7

the interest of justice be paid out of the recovery, if any." "The burden is on the claimant to establish each prerequisite to an award of attorney fees under section 1021.5." (*Ebbetts Pass Forest Watch v. Department of Forestry & Fire Protection* (2010) 187 Cal.App.4th 376, 381; see *id.* at pp. 387–388.)

"A trial court's decision whether to award attorney fees under section 1021.5 is generally reviewed for abuse of discretion. (*Vasquez v. State of California* (2008) 45 Cal.4th 243, 251; [citation].)" (*Samantha II*, *supra*, 207 Cal.App.4th at p. 78.)

We determined in *Samantha C. II* that Samantha was entitled to attorney fees under section 1021.5 and remanded for the trial court to determine an appropriate fee award. As we explain, we conclude the court did not abuse its discretion in its award of attorney fees in the amount of $284,108.

**2. The trial court did not abuse its discretion in denying Samantha attorney fees for Churchill's services in the administrative proceedings**

Samantha claims the trial court abused its discretion by failing to award attorney fees for the purported legal services provided by Churchill at the administrative hearings. We conclude the court did not abuse its discretion in denying Samantha attorney fees for Churchill's services in the administrative proceedings because, even if the evidence supported Churchill's claim she acted as Samantha's attorney in those proceedings, Churchill failed to keep accurate, contemporaneous records of her services.

Samantha urges Churchill had acted as Samantha's attorney in the administrative hearings, citing the administrative record showing Churchill titled herself as an "attorney" and sometimes "advocate" in affidavits, transcript requests, pleadings, and subpoenas duces tecum. On the other hand, HRC points to documents in which Churchill referred to herself as Samantha's representative and to a dialogue between the ALJ and Churchill from which it could be inferred Churchill did not act as Samantha's attorney for the purposes of introducing evidence. Although the written statement of decision concludes Churchill did not act as Samantha's attorney, at the hearing, the trial court was less certain, stating, "I guess it's up in the air."

8

We conclude it does not matter whether Churchill acted as Samantha's attorney in the administrative proceedings because, as the trial court determined, Churchill did not keep accurate, contemporaneous records of the time she claims to have spent on the administrative hearings.  The parties seeking attorney fees "'bear[] the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates.'  [Citation.]  To that end, the court may require [them] to produce records sufficient to provide '"a proper basis for determining how much time was spent on particular claims."'  [Citation.]  The court also may properly reduce compensation on account of any failure to maintain appropriate time records.  [Citation.]" (*ComputerXpress, Inc. v. Jackson* (2001) 93 Cal.App.4th 993, 1020.)  "The evidence should allow the court to consider whether the case was overstaffed, how much time the attorneys spent on particular claims, and whether the hours were reasonably expended.  [Citation.]" (*Christian Research Institute v. Alnor* (2008) 165 Cal.App.4th 1315, 1320.)

The trial court needed reasonably accurate records to fulfill its duty to "consider the extent of the parties' participation in the administrative proceeding and the cost and time necessary to reasonably prepare" in connection with such proceedings.  (*Edna*, *supra*, 197 Cal.App.4th at p. 1320.)

Here, after Samantha successfully appealed the denial of her motion for attorney fees, Churchill made an estimate in 2013 of hours based on work she claimed to have performed in 2006 by reviewing her computer files for those services she said she provided with respect to, among other things, appearances, drafting pleadings, research, and preparing expert witnesses for testimony.  On appeal, Samantha contends the trial court abused its discretion by failing to take into consideration exhibits that provided supporting documentation for her legal fees.  Contrary to her contention, the reporter's transcript shows the court considered those exhibits, then concluded Churchill had not provided accurate, contemporaneous records.  The court asked Churchill, "In 2013, you went back and estimated what you did on March 3rd [*sic*], 2006?"  After receiving an affirmative response, the court stated, "You can't do that.  That's not contemporaneous. That's just you didn't do the work."

9

We conclude the court did not abuse its discretion in concluding Churchill's failure to keep accurate, contemporaneous records precluded her from being awarded attorney fees. This case is not like *Cates v. Chiang* (2013) 213 Cal.App.4th 791, where the party claiming attorney fees hired an expert to prepare attorney time records from contemporaneous time records and carefully reconstructed time records, which were very detailed, and omitted claimed hours that could not be reconstructed "'with enough precision.'" (*Id*. at p. 819.) Here, Churchill made a stab at reconstructing the records seven years after the fact and did not provide information whether she had staff or was charging legal time for her own secretarial work. We conclude the lack of accurate, contemporaneous records provided an appropriate basis for the court to deny the claimed attorney fees.

The trial court also declined to award Churchill's attorney fees by relying on *Beach* and other cases holding attorney fees in administrative hearings cannot be recovered under section 1021.5 because an administrative hearing is not an action under the Code of Civil Procedure. (*Beach*, *supra*, 166 Cal.App.3d at pp. 115–116; *Gilliland*, *supra*, 89 Cal.App.4th at p. 216 [administrative proceedings are not within the definition of an action to a proceeding in a court of justice]; *Sampson v. Parking Service 2000 Com., Inc*. (2004) 117 Cal.App.4th 212, 215 [for purposes of recovery of attorney fees in administrative action, "civil action," as used in the Labor Code, means an action that is filed in court].) Because we conclude the court did not abuse its discretion in denying attorney fees to Samantha for Churchill's inadequately documented work, we need not decide whether, as Samantha contends, *Best* and *Edna* compel an award of attorney fees for work in administrative proceedings.

The trial court did not abuse its discretion in denying attorney fees for Churchill's services in the administrative proceedings.

**3. The trial court did not abuse its discretion in setting a billable hourly rate of $395 per hour for Beltran and $250 per hour for Churchill**

We disagree with Samantha's contention the trial court abused its discretion in setting Beltran's rate at $395 per hour and Churchill's rate at $250 per hour.

10

"'[T]he fee setting inquiry in California ordinarily begins with the "lodestar," i.e., the number of hours reasonably expended multiplied by the reasonable hourly rate. "California courts have consistently held that a computation of time spent on a case and the reasonable value of that time is fundamental to a determination of an appropriate attorneys' fee award."' [Citation.] Generally, the reasonable hourly rate used for the lodestar calculation 'is that prevailing in the community for similar work.' [Citations.] After making the lodestar calculation, the court may augment or diminish that amount based on a number of factors specific to the case, including the novelty and difficulty of the issues, the attorneys' skill in presenting the issues, the extent to which the case precluded the attorneys from accepting other work, and the contingent nature of the work. [Citation.]" (*Center for Biological Diversity v. County of San Bernardino* (2010) 188 Cal.App.4th 603, 616.)

Our review of the record shows the trial court carefully considered all arguments of counsel and documents submitted in setting the billable hourly rates for Beltran and Churchill. As to Beltran, the court pointed out Beltran had charged Samantha $395 per hour and Samantha's motion sought fees based on Beltran's hourly rate of $395 per hour. Beltran appeared to concede the point, replying, "All right." Although Samantha argues on appeal the court should have applied Beltran's market rate of $425 per hour, we note the evidence that Beltran's market rate was $425 per hour was based only on his testimony during the hearing and not on the market rate of other attorneys in the same practice area, as required. By contrast, HRC presented evidence its lawyers, who were experienced in disability law, billed at hourly rates of $195 until January 1, 2013, when the rates increased to $225 per hour. Accordingly, we conclude the court did not abuse its discretion in awarding fees based on an hourly rate of $395 per hour for Beltran.

As to Churchill, the trial court acted well within its discretion in taking into account Churchill's admitted lack of experience in administrative and disability law in awarding her fees at an hourly rate of $250 rather than the hourly rate of $350 she requested and which was at "the high end of her rates in 2008." The declarations attached to Samantha's motion for attorney fees do not assist her argument Churchill was

11

entitled to a higher billable rate. The declarations were from attorneys who charged $325 per hour and did not practice in the area of disability law, but in the area of business litigation, personal injury, and medical malpractice. As stated, HRC presented evidence it paid its attorneys $195 to $225 per hour. Accordingly, we conclude the court did not abuse its discretion in applying a billable hourly rate of $250 for Churchill.

**4. The trial court did not abuse its discretion in refusing to apply a multiplier factor to the lodestar**

We disagree with Samantha's contention the trial court abused its discretion in refusing to apply a multiplier factor of two.

"Once the lodestar is fixed, the court may increase or decrease that amount by applying a positive or negative 'multiplier' to take other factors into account. [Citation.] These factors include, but are not limited to, (1) the novelty and difficulty of the questions involved; (2) the skill displayed in presenting them; (3) the extent to which the nature of the litigation precluded other employment by the attorneys; (4) the contingent nature of the fee award; and (5) the fact that an award against the state would ultimately fall upon the taxpayers." (*Rey v. Madera Unified School Dist.* (2012) 203 Cal.App.4th 1223, 1240.) "[T]he trial court is not *required* to include a fee enhancement for exceptional skill, novelty of the questions involved, or other factors. Rather, applying a multiplier is discretionary. [Citation.] Further, the party seeking the fee enhancement bears the burden of proof." (*Id.* at p. 1242.) Thus, even though the *Rey* case was novel, the trial court did not abuse its discretion in refusing to apply a multiplier. (*Ibid.*)

We conclude the trial court did not abuse its discretion in refusing to apply a multiplier. Although Samantha claims on appeal Beltran and Churchill took the case on contingency, the trial court noted, while Beltran's work in *Samantha C. I* was novel, he operated on only a limited contingency. Although Churchill operated on a true contingency during the period she worked as an attorney for Samantha, Churchill's work was not novel. Moreover, Samantha does not argue that Beltran and Churchill were precluded from obtaining other work.

12

**5.  The trial court did not abuse its discretion by treating editing services as costs**

We next conclude the trial court did not abuse its discretion by treating $15,000 in costs claimed by Beltran as costs rather than attorney fees under section 1021.5.

Section 1021.5 authorizes only attorney fees and not costs such as expert witness fees.  (*Olson v. Automobile Club of Southern California* (2008) 42 Cal.4th 1142, 1146.)  The record shows that Beltran presented the brief editing services for $15,000 as costs, and not as a request for attorney fees.  At oral argument, Beltran conceded the editing services were costs and appeared to imply the attempt to add the editing services as attorney fees was Churchill's idea.  Samantha's cursory request to convert these costs to an award of attorney fees is not supported by invoices, time records, billings, or even the name of the attorney involved.

We conclude the trial court did not abuse its discretion in treating the editing services as costs.

**6.  The trial court did not abuse its discretion by failing to reduce the attorney fees awarded to Beltran by $135,009**

On appeal, Samantha contends the trial court erred by failing to reduce Beltran's award of legal fees by $135,009, which she claimed to have paid him during the course of litigation.  She requests that we modify the court's order, reducing Beltran's fees by $135,009 and ordering him to reimburse Churchill in that amount.

Although Samantha refers to exhibits attached to her motion for attorney fees indicating a claimed payment by Churchill to Beltran of $135,009, in its statement of decision the court noted the agreement between Beltran and Churchill was vague and it was unclear what Beltran actually charged and what Churchill actually paid.  We conclude Samantha has failed to establish the court abused its discretion in failing to reimburse Churchill for fees she claimed to have paid Beltran but was unable to prove.[2]

---

[2] We deny HRC's motion to take additional evidence on appeal, which it claims shows HRC's attempted payments to Churchill accounting for amounts HRC and Beltran agreed Churchill had paid to Beltran during the litigation proceedings.

**DISPOSITION**

The trial court's order is affirmed.

NOT TO BE PUBLISHED.


MILLER, J.*


We concur:


CHANEY, Acting P. J.


JOHNSON, J.

---

**\*** Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.